[L. A. No. 13503. In Bank.—June 2, 1932.]

In the Matter of the Validation of Bonds of THE METRO-
POLITAN WATER DISTRICT OF SOUTHERN
CALIFORNIA. THE METROPOLITAN WATER
DISTRICT OF SOUTHERN CALIFORNIA (a Public
Corporation), Respondent, v. J. E. BURNEY, Appel-
lant.

Everett R. James for Appellant.

James H. Howard, Charles C. Cooper, Jr., and Ray W. Bruce for Respondent.

LANGDON, J.—This is a proceeding to determine the validity of certain bonds authorized to be issued by the Metropolitan Water District, petitioner herein.

Petitioner was regularly organized under the Metropolitan Water District Act (Stats. of 1927, chap. 429, p. 694), and since December 6, 1928, has been operating thereunder. It embraces territory included within the corporate boundaries of the cities of Beverly Hills, Burbank, Compton, Glendale, Long Beach, Los Angeles, Pasadena, San Marino, Santa Monica and Torrance, in the county of Los Angeles, and Anaheim, Fullerton and Santa Ana, in the county of Orange. On September 11, 1931, the board of directors of said district adopted an ordinance which determined

that the interests of the district demand the acquisition and construction of a certain public improvement, namely, a water system for supplying its inhabitants with water from the Colorado River, and that the cost thereof was too great to be paid out of the ordinary annual income of the district. The ordinance authorized the holding of a special election on September 29, 1931, to submit to the voters the proposition of incurring a bonded indebtedness of $220,000,000 for the purpose of acquiring and constructing said water system, and for the levy and collection of taxes to pay interest and for a sinking fund. The election was duly held and the bond issue was authorized by a vote of 224,477 to 46,388.

Section 7, subdivision (i) of the act as amended in 1931 (Stats. of 1931, chap. 323, p. 823) provides in part as follows: ''The board of directors shall, within ninety (90) days from the date of the election authorizing the issuance of bonds, cause to be brought in the name of the district an action in the superior court of the county in which said district, or the greater portion of the property subject to taxation by said district, according to the most recent assessment, is located, to determine the validity of any such bonds and the sufficiency of the provision for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due and to constitute a sinking fund for the payment of the principal thereof on or before maturity. Such action shall be in the nature of a proceeding *in rem*, and jurisdiction of all parties interested may be had by publication of summons. . . . '' Pursuant to this section, a petition was filed on October 17, 1931, in the Superior Court of Los Angeles County, to determine the validity of the bonds authorized at the election, and the sufficiency of the taxing provisions of the ordinance. An *alias* summons was issued and duly published, directed to ''all persons interested'' in the matter. On November 13, 1931, defendant Burney, owner of taxable property within the district, appeared and filed a demurrer and answer to the petition. On December 3, 1931, the court granted a motion of petitioner to enter the default of all persons other than said defendant. Thereafter the demurrer was overruled, the trial was had, and the court made its findings and conclusions of law on December 8, 1931. The findings

established the due incorporation of the district, the proper submission and favorable vote on the bond issue, and the fact that the same did not exceed fifteen per cent of the assessed valuation of the taxable property within the district.

The sufficiency of the evidence to support these findings is not questioned. Defendant attacks the legality of the proceedings and certain rulings of the court excluding evidence offered by him.

█ The first contention is that the court had no jurisdiction to hear the proceeding because only seventy days had elapsed between the election and judgment of the court. The argument is that the act (sec. 7, subdivision [i]) provides for a special proceeding which must be strictly followed, and that it gives taxpayers of the district ninety days from the date of the election to file an action to contest the validity of bonds or proceedings in relation thereto. This contention was not raised in the lower court, and, indeed, it is impossible to see how defendant can raise it at all, since he did make an appearance and set forth grounds of contest, and hence has had full protection of his right to a hearing. Nevertheless, an examination of the statute shows the error of defendant's interpretation. It provides that jurisdiction ''shall be complete within ten (10) days after the full publication of such summons in the manner herein provided. Anyone interested may at any time before the expiration of said ten (10) days appear and by proper proceedings contest the validity of such bonds. . . . '' Further on it is provided: ''After the expiration of ninety (90) days from the date of the election authorizing the issuance of bonds, no action may be brought to contest or question the validity of such bonds and proceedings in relation thereto. . . . '' It is clear that the second provision simply constitutes a *limitation* upon the right to bring actions to contest the validity of the bonds and proceedings after ninety days, and does not purport to *authorize* the bringing of such actions for a period of ninety days. █ Irrespective of any right of taxpayers to sue, the statute permitted the district to bring an action, and specified the time within which jurisdiction should attach. The proceedings taken herein followed the statute and the court had jurisdiction to render the judgment.

■ The second contention is that the ordinance of the district did not follow the statute. The particular provision alleged to be violated is that which specifies that when the board, by ordinance, shall determine that the interests of the district and the public interest or necessity demand the acquisition, construction or completion of "any public improvement", they must submit the proposition of incurring a bonded indebtedness to the voters, and that the ordinance shall recite, among other things, "the estimated cost of the public works or improvements". Defendant argues that the statute by this language requires the selection of some definite works or improvements, and an estimated cost of such particular works, prior to the election; and that the ordinance is indefinite as to the method or plan of bringing the water to the district. Obviously no such narrow meaning can be attributed to the general language of the act. There is no requirement that the precise location of the system be stated, and the description in the ordinance is as full as the statute demands. (See *Clark* v. *Los Angeles,* 160 Cal. 30 [116 Pac. 722].)

■ The next contention of defendant is that the act violates article XI, sections 12 and 13 of the California Constitution, in permitting the appointive board of directors of the district to levy taxes. . This question was fully considered by us and determined adversely to the contention of defendant in *Golden Gate Bridge & Highway Dist.* v. *Felt,* 214 Cal. 308 [5 Pac. (2d) 585], and *Pasadena* v. *Chamberlain,* 204 Cal. 653 [269 Pac. 630].

■ Defendant suggests also that the ordinance should not have included any reference to taxes because the directors have no authority to levy them until the revenues of the district are insufficient to meet its expenses and other charges, and that consequently the question of taxes is prematurely raised. The reference in the ordinance to the taxing power is a restatement of the provisions of the statute itself, and the current expenses of the district will have to be met by taxation, if necessary, before any revenue is produced from the new system. We see nothing improper in the ordinance in this respect.

■ The final contention is that the court erred in excluding certain evidence offered by defendant. In brief, defendant offered to show that the district owned no water rights

and that the cost of bringing water from the Colorado River would be far in excess of $220,000,000. No charge of fraud was made, but counsel for defendant sought to examine the engineer and some of the officers of the district on the matters upon which their conclusions were based. It does not appear that anything was attempted. save to dispute the facts upon which the board reached its conclusion. This was ruled immaterial by the court, and we think the ruling was proper. The board was required to make a plan and estimate of costs, which it did. The proposition to incur a certain indebtedness for the purpose of carrying out this plan was approved by the voters. If the good faith of the board is not attacked, there is nothing in the plan or estimate which is subject to judicial review.

The judgment is affirmed.

Shenk, J., Curtis, J., Preston, J., Tyler, J., *pro tem.*, Seawell, J., and Waste, C. J., concurred.