[S. F. No. 20414.   In Bank.   Nov. 16, 1961.]

ASSOCIATED HOMEBUILDERS OF THE GREATER EAST BAY, INC., Plaintiff and Respondent, v. CITY OF LIVERMORE, Defendant and Appellant.

Richard M. Callaghan, City Attorney, Sturgis, Den-Dulk, Douglass & Anderson and Robert T. Anderson for Defendant and Appellant.

John A. Bohn, Charles J. Williams, Grayson Price, City Attorney (Chico), Melvin E. Cohn, City Attorney (San Carlos), Allen Grimes, City Attorney (Modesto), Robert J. Costello, City Attorney (Redwood City), Ralph H. Prince, City Attorney (San Bernardino), J. P. Correia, City Attorney (Yreka), Thomas C. Nelson, City Attorney (Mill Valley), Henry M. Busch, City Attorney (Upland and Montclair), William A. Struthers, Jr., City Attorney (Pleasanton), Richard B. Maxwell, City Attorney (Santa Rosa), Robert A. Boon, City Attorney (Roseville), Robert R. Willard, City Attorney (Ojai), Edouard Robert, City Attorney (Petaluma), and Frank L. Sprague, City Attorney (Santa Maria), as Amici Curiae on behalf of Defendant and Appellant.

Robert J. Foley, Lawrence D. Saler and Richard L. Doutt for Plaintiff and Respondent.

Fain & Lavine and Richard A. Lavine as Amici Curiae on behalf of Plaintiff and Respondent.

SCHAUER, J.—Defendant City of Livermore appeals from a judgment which declares unconstitutional and void two of its ordinances providing for sewer connection charges for new connections to defendant's sewer system, and awards plaintiff Associated Homebuilders the sum of $102,700, which the trial court found to be the total amount paid to defendant by plaintiff's assignors under both ordinances.

Defendant contends that the subject legislation (Ordinance 332, adopted in 1956, superseded by Ordinance 382, adopted in 1958) is valid both as a proper exercise of the taxing power vested in defendant by section 5471 of the Health and Safety Code (*post*, fn. 1) and as a proper exercise of the police power (Cal. Const., art. XI, § 11); that the classification established by Ordinance 332 was not discriminatory; and that in any event plaintiff may not recover those charges which its assignors paid without formal protest. We have concluded that section 5471 of the Health and Safety Code authorizes the legislation here challenged; and that plaintiff failed to sustain the burden of showing that Ordinance 332, as applied, discriminated against its assignors. In the premises we do not reach the questions of whether these enactments might also be sustained as police power measures or whether formal protest would have been a condition precedent to recovery.

On April 9, 1956, the Livermore City Council adopted Ordinance 332, which imposed a charge of $150 a "dwelling unit" for all connections thereafter made to the Livermore sewer system. The term "dwelling unit" was defined to include "each single family dwelling, and each unit of an apartment, flat or multiple dwelling structure used for human habitation." Section 3 of the ordinance created a "Sanitation Fund" into which all sewer connection charges collected were to be deposited. This special fund was to be used "for the purpose of expanding the sanitary sewer system of the City of Livermore and/or the servicing of any bonded indebtedness of the City of Livermore hereinafter incurred for sanitary sewer purposes." Section 4 made payment of the connection charge a prerequisite to the issuance of a building permit.

On July 7, 1958, Ordinance 382 was adopted by the Livermore City Council, expressly repealing Ordinance 332. Like the measure it supersedes, Ordinance 382 imposes a sewer connection charge of $150 a dwelling unit, but in addition sets up a schedule of such charges for commercial and industrial users as well. Section 3 of this ordinance provides for a "Sewer

Expansion Fund'' into which all sewer connection charges collected are to be deposited; and the use of the fund is again restricted to ''expanding the sanitary sewer system of the City of Livermore and/or the servicing of any bonded indebtedness of the City of Livermore hereinafter incurred for sanitary sewer purposes.'' As with the prior measure, section 4 of the ordinance provides that building permits shall issue only upon payment of the sewer connection charge. Other sections provide for reimbursement to subdividers or other property owners who are required to construct a sewer main of a larger capacity than the minimum needed to serve such subdivision or other property, by levying a prorated charge against other parcels of land benefited by the increased capacity thus furnished.

At the time of the adoption of the subject legislation other ordinances of defendant city provided for sewer construction inspection fees, ''annexation fees'' (imposed on property annexed to defendant for such property's share of existing capital improvements), and charges for the extension of street or house laterals. General obligation bonds were issued in 1957 to defray the cost of sewer plant construction and trunk and interceptor line installation.

Plaintiff's assignors, all residential builders, paid the sewer connection charges required by Ordinances 332 and 382 as a prerequisite to the issuance of building permits. Some of these payments were expressly made under protest, while others were not. Plaintiff obtained a judgment declaring the subject ordinances to be unconstitutional and allowing recovery of all payments made thereunder to defendant.

The trial court ''found'' (i.e., concluded) that each ordinance was a revenue measure rather than a police power enactment and that defendant, as a general law city, was ''without statutory or constitutional authority'' to enact such ordinances under its taxing power. ▮▮ Article XI, section 12, of the California Constitution provides in relevant part that ''Except as otherwise provided in this Constitution, the Legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.'' Defendant contends that, pursuant to this constitutional provision, power to levy sewer connection

charges for revenue purposes was vested in the City of Livermore by section 5471 of the Health and Safety Code.[1]

The contention must be sustained. ■ The manifest purpose of section 5471 is to provide revenues for the construction and maintenance of local water or sewer systems (other than "local street sewers or laterals"). ■ The subject ordinances declare[2] that their purpose is "To establish appropriate provisions for the construction and expansion of the sanitary sewer system of the City of Livermore, . . ." The charges which they impose to achieve this end are denominated "Connection Charges For The Privilege Of Connecting To" defendant's sewer system. As noted above, the funds thus raised are dedicated to "expanding the sanitary sewer system" of defendant city and "the servicing of any bonded indebtedness" of defendant incurred for sewer purposes. Such charges fall within the stated scope of section 5471 and are authorized by it as "fees . . . or other charges for services and facilities furnished by [defendant city] . . . in connection with its sanitation or sewerage systems; . . ." ■ In any given case the charge prescribed by the subject ordinances is measured by the use to which the property (and consequentially the city's sewer system) will be put, including the number and type of plumbing fixtures to be installed. Accordingly, it does not constitute an assessment on the value of the property, such as we considered in *City of Los Angeles* v. *Offner* (1961) 55 Cal.2d 103 [10 Cal.Rptr. 470, 358 P.2d 926], but rather is in the nature of an excise tax imposed on all persons thereafter applying for building permits for the privilege of con-

---

[1]Section 5471 provides in relevant part:

"*Any entity* [defined to include cities by § 5470, subd. (e)] *shall have power*, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, *to prescribe, revise and collect, fees*, tolls, rates, rentals, *or other charges for services and facilities furnished by it*, either within or without its territorial limits, *in connection with its sanitation or sewerage systems*; . . . Revenues derived under the provisions in this section, shall be used only for the acquisition, construction, reconstruction, maintenance and operation of water systems and sanitation or sewerage facilities, to repay principal and interest on bonds issued for the construction or reconstruction of such water systems and sanitary or sewerage facilities and to repay federal or state loans or advances made to such entity for the construction or reconstruction of water systems and sanitary or sewerage facilities; provided, however, that such revenue shall not be used for the acquisition or construction of new local street sewers or laterals as distinguished from main trunk, interceptor and outfall sewers." (Italics added.)

[2]For convenience in discussing both measures Ordinance 332 will be referred to in the present tense.

nection to (and is reasonably commensurate with the burden to be imposed on) the facilities of defendant's sewer system.

■ Plaintiff and amici curiae contend that the legislative history of Health and Safety Code, sections 5471 and 5474,[3] demonstrates that sewer connection charges were not intended to be included within those authorized by the former section. They argue that both sections were considered and enacted at the same time, and that if section 5471 had been intended to authorize sewer connection charges by "Any entity" (defined by § 5470, subd. (e), to include county sanitation districts) there would have been no purpose in enacting section 5474, which expressly authorizes county sanitation districts to impose such charges. Section 5471, however, was first enacted in 1945, and was then numbered section 5470. It was amended in minor respects in 1949, 1951, and 1953, but has retained throughout the language here relevant, authorizing the imposition of "fees . . . or other charges for services and facilities furnished by it . . . in connection with its sanitation or sewerage systems; . . ." The reenactment and renumbering of this section in 1953, when section 5474 was first enacted, was but a recodification of a statute which had then been in force for some eight years. It cannot be said that the operative provisions of the two sections were "considered" by the Legislature at the same time. ■ Nor can it be said that section 5474 has "no purpose" other than to authorize county sanitation districts to impose sewer connection charges: it expressly provides for a method of collecting such charges (on an installment basis over a period of years, with interest) which is not authorized by section 5471 or any of its companion provisions (§§ 5472 to 5473.9). Plaintiff's interpretation of the legislative history of the two sections is unsound.

■ The trial court also "found" that the classification established by Ordinance 332 was arbitrary, discriminatory and unreasonable "in that said Ordinance levied connection

[3]Section 5474 provides in relevant part:

"A county sanitation district shall have the power by ordinance approved by two-thirds vote of the members of the legislative body thereof to fix fees or charges for the privilege of connecting to its sanitation or sewerage facilities, to fix the time or times at which such fees or charges shall become due, to provide for the payment of said fees or charges prior to connection or in installments over a period of not to exceed 15 years, to provide the rate of interest, not to exceed 6 percent per annum, to be charged on the unpaid balance of such fees or charges, . . ."

fees against residential sewer connections only, and made no charge whatsoever against industrial or commercial connections to the sewer system." The evidence fails to support this determination. Section 2 of Ordinance 332 established sewer connection charges "in accordance with the following schedule:

"1. For each dwelling unit as herein defined, the sum of $150.00 per dwelling unit.

"2. The City Council of the City of Livermore shall, by Resolution or Ordinance hereafter duly passed and adopted, fix and determine connection fees for *all* connections to be made to the sanitary sewer system of the City of Livermore by *all* commercial and manufacturing plants or establishments, together with all necessary rules and regulations governing the methods of said connections and the pre-treatment of any sewage requested to be accepted through such connections should the nature and type of such sewage require any pretreatment." (Italics added.)

In the state of the record before us it does not appear that it was either arbitrary or unreasonable for the city to provide that the charges for future commercial and industrial sewer connections would be fixed by resolution or ordinance thereafter to be adopted. At the time Ordinance 332 was proposed there might well have been a sound basis for determining the charges for residential connections but none as yet for other types of connections. Further, it may then have appeared expedient to determine the charges for commercial and industrial connections (which by their very nature pose problems more complex than residential connections) on an individual application basis, as the need arose. The particular sequence or manner in which such charges were to be fixed (absent some extraordinary situation not here shown) was a matter wholly within the legislative discretion of the Livermore City Council and hence beyond the scope of judicial inquiry (*cf. Nickerson* v. *County of San Bernardino* (1918) 179 Cal. 518, 522-523 [177 P. 465] ; *City Council* v. *Superior Court* (1960) 179 Cal. App.2d 389, 396-399 [6] [3 Cal.Rptr. 796] ; see generally *State* v. *Industrial Acc. Com.* (1957) 48 Cal.2d 365, 371 [1]-372 [7] [310 P.2d 7]).

■ Ordinance 332 was therefore valid on its face, and plaintiff had the burden of evincing facts to show that it was unconstitutional as applied (*cf. Hunter* v. *Justice's Court* (1950) 36 Cal.2d 315, 322 [2] [223 P.2d 465], quoting from

*Bernstein* v. *Bush* (1947) 29 Cal.2d 773, 777 [2] [177 P.2d 913]), i.e., by establishing that during the life of the ordinance defendant granted building permits to commercial or industrial applicants without requiring payment by them of sewer connection charges, thereby discriminating in fact against those of plaintiff's assignors who had been required to pay such charges. Plaintiff did not sustain this burden. Although various residential builders took the stand and testified to paying connection charges while the ordinance was in force, the record is devoid of evidence that during the same period any commercial or industrial user applied for and was granted a building permit free of a connection charge. In the absence of such evidence, plaintiff fell short of showing that Ordinance 332 operated to discriminate against its assignors.

The judgment is reversed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.