# Richmond

## WASHINGTON HOLDING CORPORATION v. COUNTY UTILITIES CORPORATION.

January 16, 1967.

Record No. 6381.

Present, All the Justices.

*J. Cameron Mann* and *Maurice Steingold* (*Steingold, Steingold & Chovitz*, on brief), for the appellant.

*T. Howard Spainhour (Kaufman, Oberndorfer and Spainhour,* on brief), for the appellee.

SNEAD, J., delivered the opinion of the court.

Washington Holding Corporation appealed as a matter of right from an order of the State Corporation Commission wherein County Utilities Corporation was authorized to charge Washington Holding Corporation a line connection fee of $17,325 for the privilege of connecting its new 99 bed "Virginia Nursing Home" in Virginia Beach to the lines and sewage disposal facilities of County Utilities Corporation.

County Utilities furnishes sewage disposal service within an area of the city of Virginia Beach designated by the State Corporation Commission. Charges for this service are made on the basis of rates fixed by County Utilities with the approval of the Commission. There is a one-time line connection fee as "a contribution in aid of construction" and maintenance of the facilities which each customer must pay before making connection with the sewer line. The customer is also required to pay the costs for the physical connection to the main sewer line and a quarterly service charge.

Initially, County Utilities was designed to serve single family residences in the subdivision of Birchwood Gardens which necessitated only the establishment of a standard line connection charge. However, subsequent development in the area brought requests for service from owners of business establishments and apartment units. As a consequence County Utilities fixed with the approval of the Commission the following basic rate categories:

"1. Residential unit line connection charge per unit payable in advance by owner, builder or contractor shall be in the amount of $250.00

"2. Multi-residential unit line connection charge payable in advance by owner, builder or contractor shall be $175.00 per individual living unit, with a minimum charge for each individual living unit of $175.00

"3. Non-residential unit line connection charge payable in advance by owner, builder or contractor shall be $500.00 per each 400-gallons daily flow or fraction thereof, for each such unit based upon the rated flow with a minimum charge of $500.00"

It will be observed from the foregoing that residential and multi-residential connection charges are computed on a unit basis, and non-

residential connections are computed on daily sewage flow. A rate differential between residential and non-residential property was established because the latter places a greater burden upon the sewer system which must stay within its capacity of 800,000 gallons daily flow as fixed by the State Water Control Board.

In November, 1964, J. M. Underwood, general manager of Underwood and Temple Construction Company, exhibited to Stanley Waranch, executive vice-president of County Utilities, preliminary plans for Washington Holding's proposed nursing home and requested a rate quotation for sewer service. Since County Utilities had no rate classification for nursing homes as such and because non-residential line connection charges were based on rated sewage flow, Waranch computed the daily flow at 12,000 gallons per day and applied the non-residential rate for line connections, which amounted to $15,000. By letter dated November 11, 1964, Waranch quoted Underwood this figure and also a service rate of $390 per quarter. Several weeks later Underwood and Temple Construction Company executed a contract with Washington Holding to construct the nursing home.

Subsequently, Waranch consulted with representatives of the State Department of Health. Norman Phillips, Jr., Director of the Bureau of Sanitary Engineering, recommended the use of 250 gallons per day for each bed in determining the sewage flow. On this basis County Utilities computed a total daily flow of 24,750 gallons for the 99 bed nursing home. This computation under the established rates for non-residential property resulted in a quotation of $31,000 in lieu of the quotation of $15,000 formerly submitted. At the hearing before the Commission, Phillips and Robert Jennings, Area Representative of the State Water Control Board, testified that they considered a flow of 250 gallons per day per bed a reasonable estimate for the nursing home.

Washington Holding disputed the amount demanded and also the propriety of a line connection charge. It filed a petition and amended petition with the Commission and alleged, among other things, that its offer to pay $15,000 under protest for the connection had been refused; that the nursing home was completed to a point where sewage disposal service was a necessity; that it had sought and had been denied injunctive relief against County Utilities; and that the charges for line connection fee and disposal service were unreasonable, arbitrary and not justified under rates approved by the Commission.

The petitioner prayed that an order be entered requiring County Utilities to permit connection to its sewer line and to furnish disposal service pending a decision upon the deposit of money or a bond for County Utilities' protection in an amount to be fixed by the Commission; that a hearing be had, and that "an investigation [be] ordered to determine and to establish rates and charges for sewer connection fees, if any, and service charges for nursing homes to be charged" by County Utilities.

At the hearing had on the petition, Washington Holding presented no evidence to show a proper connection charge based on daily rate of sewage flow. It argued there, as it does here, that no line connection charge should be made at all, as the cost of County Utilities had been substantially recouped or recovered from fees already paid by existing customers. On the other hand, County Utilities produced expert witnesses who gave their opinions as to rates of flow for a nursing home. Further, County Utilities presented evidence to show that, while the cost of its existing facility had been largely recovered, expansion, land acquisition and improvements would require additional and substantial funds derived from connecting fees.

Waranch testified that about 17 acres of land upon which the plant is located is not owned by County Utilities and that the acquisition of it will require an undetermined expenditure by the corporation. He further testified:

"Q. Now, would you tell us the status of the digesters in this plant at the present time?

"A. The digesters will either have to be heated or converted from anaerobic to aerobic.

"Q. And is this something that is desired or something that is necessary?

"A. Something that we have been strongly urged by the Virginia Department of Health and Water Control Board, inasmuch as the digester in its present condition is not performing during winter months, and has required the limited use of the plant or that portion of the plant that has an anaerobic digester.

"Q. Do you have any idea what it would cost to heat or convert this digester?

"A. Yes, Sir; thirty thousand dollars.

"Q. Is there any other expenditure of a capital nature that you anticipate making?

"A. Yes, Sir. The Water Control Board has directed that the nutrients be removed from the effluent and there will be a substantial expenditure in doing this.

"Q. Can you tell us about how much?

"A. No, Sir, but the engineers we have talked to have told us it will be substantial, and we should be prepared to spend in six figures, whatever that meant.

"I would also like to point out, Mr. Spainhour, that we do not depreciate this plant, and that the repairs and replacements will be substantial, and should we have a major repair, our rates would not provide enough income to permit us to make these repairs."

In its unanimous written opinion, the Commission found that the three rate categories of County Utilities "contemplated that the consumers would comprise owners of dwelling houses, apartment houses and places of business", and that a "nursing home does not fall within any of the categories; from the point of view of the patients it is a place of residence; from the point of view of the proprietor it is a place of business." The Commission rejected County Utilities' contention that a nursing home should be placed in the "non-residential" rate classification. In finding that such a home was more like an apartment house, the Commission stated that "[t]he testimony of the expert witnesses persuaded us that a 99-bed nursing home would put much the same burden on the sewer as a 99-unit apartment house, and we fixed the rate for nursing homes at $175.00 per bed."

With regard to Washington Holding Corporation's claim that it should pay nothing for the line connection since existing customers have already paid for most of the facilities, the Commission observed in denying the claim that an acceptance of this contention would discriminate against the other customers who have contributed their share of capital to the construction of the facilities. The Commission concluded that it was "reasonable and just" to place nursing homes in the category of "multi-residential", and that all "debatable questions" had been decided in favor of Washington Holding.

By order entered October 28, 1965, County Utilities was authorized to charge Washington Holding a line connection fee of $17,325 ($175 per bed) and the proceeding was dismissed from the docket. Subsequently, Washington Holding petitioned for a rehearing and it was denied.

Washington Holding has assigned three errors. It contends (1)

that the line connection charge set by the Commission was, as a matter of law, arbitrary, unreasonable and without justification; (2) that the Commission erred in classifying the nursing home as equivalent to a 99 unit apartment building for the purpose of assessing a line connection charge, and (3) that the Commission erred in refusing evidence of sewer connection charges made by other utility companies.

Under the authority vested in it by § 156(c) of the Constitution of Virginia, the General Assembly has enacted statutes which confer jurisdiction on the State Corporation Commission to fix rates and charges of public utilities operating in this State. Code, § 56-235 provides:

"If upon investigation the rates, tolls, charges, schedules, or joint rates of any public utility operating in this State shall be found to be unjust, unreasonable, insufficient or unjustly discriminatory or to be preferential or otherwise in violation of any of the provisions of law, the State Corporation Commission shall have power to fix and order substituted therefor such rate or rates, tolls, charges or schedules as shall be just and reasonable."

The Commission, in fixing rates that are just and reasonable, exercises a legislative function delegated to it by the General Assembly, and there is a reasonably wide area in which legislative discretion may be exercised. *Board of Supervisors* v. *Virginia Electric and Power Co.*, 196 Va. 1102, 1109, 87 S.E. 2d 139, 144. We are required to regard the actions of the Commission as "prima facie just, reasonable and correct". Constitution of Virginia, § 156(f). The Commission's findings cannot be disturbed "in the absence of a showing of an abuse of the discretion vested in it by statutory and constitutional provisions." *City of Bristol* v. *Railway Company*, 200 Va. 617, 624, 107 S.E. 2d 473, 477, 478.

Tested by the foregoing principles, we cannot say from the evidence adduced that the Commission's action in fixing the line connection charge at $17,325 was arbitrary, unreasonable and without justification. Likewise, we cannot say that the Commission erred in equating the nursing home to a 99 unit apartment house for the purpose of assessing a line connection charge. There was no showing that the Commission abused its discretion in this respect.

Finally, we hold that the Commission did not err in refusing evidence of sewer connection charges made by other utility companies. John Underwood, general manager of the construction com-

pany, testified that his company had erected a nursing home in Roanoke. Then he was asked: "What was the sewer connection charge there?" The Commission sustained County Utilities' objection on the ground that the charge for sewer connection in Roanoke was immaterial and irrelevant. We agree.

The order appealed from is

*Affirmed.*