[Civ. No. 31682. First Dist., Div. Two. Nov. 7, 1974.]

ENGLISH MANOR CORPORATION, Plaintiff and Appellant, v.
VALLEJO SANITATION AND FLOOD CONTROL DISTRICT et al.,
Defendants and Respondents.

## COUNSEL

Smith & Burnstein and Jack B. Burnstein for Plaintiff and Appellant.

Milton Goldinger, County Counsel, Billy B. Burton, Assistant County Counsel, Robert R. Rosson, Jr., and J. Paul Coan, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**TAYLOR, P. J.**—English Manor Corporation appeals from a judgment of dismissal[1] entered after the general demurrer of defendant, Vallejo Sanitation and Flood Control District[2] was sustained without leave to amend. The

---

[1] The record indicates that the order and judgment were entered as to all seven causes of action, although the District did not demur to the sixth cause of action. After augmenting the record on our own motion, we note that after the judgment of dismissal, the original judgment was vacated, the order amended to strike the reference to the sixth cause of action, and the judgment of dismissal was reinstated *nunc pro tunc* as of the original date. Accordingly, this opinion deals only with English Manor's first, second, third, fourth, fifth and seventh causes of action. At oral argument, the parties stipulated that the sixth cause of action had been dismissed.

[2] Hereinafter generally referred to as "the District."

instant action was brought for refund of sewer connection fees paid under protest. English Manor contends that: 1) the District ordinance which established the connection fee exceeded the permissible scope authorized by Health and Safety Code sections 5471 and 5474; 2) the fee is an unconstitutional tax; and 3) even if the ordinance is an otherwise valid taxing measure, it is discriminatory, arbitrary and unreasonable.

District Ordinance No. 11, dated November 20, 1968, prescribes a schedule of fees which must be paid by a party before connecting to the District sewer system. Section 3(11) provides that the fee to be paid by convalescent homes or hospitals is $175 for the first bed space, and $150 for each additional bed space. English Manor is the owner and developer of a 146-bed convalescent hospital located within the District. It was charged $21,925 as a connection fee pursuant to the ordinance. It paid the fee and thereafter filed a verified claim for a refund, which was rejected by the District trustees. The present action ensued.

Preliminarily, we set forth the well settled rules that govern a reviewing court in considering an appeal from a judgment sustaining a demurrer to a complaint. The allegations of the complaint must be regarded as true. It must be assumed that plaintiff can prove all of the facts as alleged. The court must in every stage of an action disregard any defect in the pleadings that does not affect the substantial rights of the parties (Code Civ. Proc., § 475). Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties (*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 288 [295 P.2d 113]).

 The thrust of English Manor's first cause of action is twofold: (1) section 5471 of the Health and Safety Code *proscribes* the use of funds for the *extension* of the system through acquisition of new local street sewers or laterals,[3] whereas Ordinance No. 11, section 8, provides that funds

---

[3]Section 5471 of the Health and Safety Code provides, in pertinent part, that "Any entity shall have power, by an ordinance . . . to prescribe, revise and collect, fees, tolls, rates, rentals, or other charges for services and facilities furnished by it. . . . Revenues derived under the provisions in this section, shall be used only for the acquisition, construction, reconstruction, maintenance and operation of water systems and sanitation or sewerage facilities, to repay principal and interest on bonds issued for the construction or reconstruction of such [systems and facilities] . . . and to repay federal or state loans or advances made to such entity . . . provided, however, that such revenue shall not be used for the acquisition or construction of new local street sewers or laterals as distinguished from main trunk, interceptor and outfall sewers."

collected pursuant thereto *shall be expended for* acquisition or *extension of any* of the District's facilities;[4] (2) section 5471 requires that fees are to be charged in exchange for services rendered to the public, whereas Ordinance No. 11 provides that the charge is only for the privilege of later obtaining services. English Manor contends that by going beyond the scope of "the enabling statute," Ordinance No. 11 is void on its face.

The lower court viewed the matter as a conflict between section 5471 and the general powers granted a municipal corporation or other political subdivision of the state. Accordingly, on this appeal both English Manor and the District view the issue in this context. Thus, English Manor urges that District ordinances are subject to the general laws, including section 5471, while the District argues that its status is analogous to a municipal corporation. However, we believe that the more appropriate approach in the instant case involves the resolution of a conflict between a general law and a special law.

The District was created by a special act of the California Legislature[5] that empowered the District to acquire sanitary sewage control works, drainage and flood control works, and any other property ". . . necessary, convenient or proper to carry out any of the provisions, objects or purposes of this act, and to complete, *extend, add to,* repair, or otherwise improve *any works* or improvements acquired by it as herein authorized." (§ 2(e); italics added.)

The District was further authorized by section 2(k) of the Act to levy assessments for the purpose of paying District obligations, and by section 2(j) to ". . . prescribe, revise and collect tolls, rents or other charges for *any services or facilities* furnished by the district." (Italics added.)

Thus, section 5471 prohibits expenditures for acquisition or construction of local street sewers or laterals, whereas the Act provides broad authorization for acquisition or construction of *any property* necessary, convenient or proper to carry out the provisions of the Act. ▮ In other words, there is an irreconcilable conflict between section 5471, a general law, and the Act, a special law. In resolving such a conflict, this court must follow

---

[4]Section 8 provides, in pertinent part: "[S]uch funds shall be expended . . . for the purpose of acquisition, construction, reconstruction or extension of any of the facilities of the District."

[5]The Vallejo Sanitation and Flood Control District Act, Statutes First Extraordinary Session 1952, chapter 17, page 351; Deerings Water Uncodified Acts, Act 8934; West's Annotated California Code, Water Code-Appendix, chapter 67. Hereinafter referred to generally as "the Act."

the rule that ". . . a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates" (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-24 [123 P.2d 505]; *City of Escondido* v. *Municipal Court* (1967) 253 Cal.App.2d 801, 805 [61 Cal.Rptr. 362]; Code Civ. Proc., § 1859).

We also note that the clear legislative intent of the Act is that it supplants general law. The Legislature declared ". . . that special facts and circumstances peculiar to the area within the district . . . makes the accomplishment of the objects and purposes of this act *impossible under existing general law* and *special legislation is necessary.* . . . Special investigation has shown that the conditions within the district . . . are peculiar to that area and that this act is *essential* to carry out the objects and purposes herein expressed. . . ." (§ 2; italics added.)

"This act is an urgency measure necessary for the immediate preservation of the public peace, health and safety. . . . *No existing legislation is available* and *no uniform law can be made available* to take care of the peculiar problems of this particular locality. . . ." (§ 29; italics added.)

We conclude that, since the District obtains its existence and powers from the Act rather than from section 5471, English Manor's first cause of action cannot be sustained as a matter of law and hence is subject to general demurrer.

English Manor's second cause of action alleges that section 5471 requires by implication that the connection fee be related to the number of plumbing facilities rather than the number of beds, and that by charging on a per-bed basis, Ordinance No. 11 contravenes the implicit intention of section 5471. However, since the second cause of action depends on section 5471 as the enabling statute, it is subject to the same shortcomings as the first cause of action and, therefore, is also properly subject to a general demurrer.

English Manor further alleges in the fourth cause of action that section 5474 requires certain notice procedures to be followed in connection with imposing such charges,[6] none of which were followed in connection

---

[6]Section 5474 states that "[p]rior to making such fees . . . the legislative body shall give notice to the owners of the lots or parcels of land affected, which notice shall set forth the following:

"1) The schedule of fees . . .

"2) A description of the property subject to such fees or charges, which descrip-

with the passage of Ordinance No. 11. As indicated above, the District is empowered by the Act creating it to prescribe, revise and collect tolls. Since these fees are collected pursuant to special legislation rather than the general legislation of section 5474, there is no requirement that the specified procedures of section 5474 be followed.

Nor can it be argued that due process requires the District to follow a notice procedure similar to that outlined in section 5474. When read in its entirety, the basic thrust of section 5474 is directed to situations in which a sanitation or sewerage entity requires property owners to connect to the system and a charge in the form of a general assessment is levied against all property owners within a specified area. Of course, in such a situation procedural due process requirements must be met. "Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered *for mere failure to act*." (Italics added.) (*Lambert* v. *California* (1958) 355 U.S. 225, 228 [2 L.Ed.2d 228, 231, 78 S.Ct. 240].)

In the instant case, English Manor is not a passive party about to be affected by an assessment against its property. Rather, it actively sought to develop property, and in order to accomplish this objective, it made application to connect to the sewer system and was required to pay the prescribed connection fee. Thus, English Manor's contention of not being afforded specific procedural due process is unavailing. The procedures specified in section 5474 were clearly intended for a different class of property owners.

English Manor also argues, along a line similar to that discussed with respect to section 5471, that the power to use funds for *any purpose* exceeds the permissible scope of section 5474. Our response to English Manor's argument in regard to section 5471 is equally applicable as to section 5474. The District was not formed under either of these enabling acts.

 English Manor's remaining causes of action generally challenge

---

tion may be by reference to a plat or diagram . . .

"3) The time or times at which such fees or charges shall become due . . .

"6) That it is proposed that the fees . . . shall constitute a lien against the . . . land. . . .

"7) The time and place at which the legislative body will hold a hearing. . . ."

Section 5474.1 provides that the notice required by section 5474 shall be published pursuant to Government Code section 6063, which requires that notice be published once a week for three successive weeks.

the constitutionality of Ordinance No. 11 by alleging that: (1) the fee is an unconstitutional tax; and (2) even if the ordinance is an otherwise valid taxing measure, it is discriminatory, arbitrary and unreasonable and thus unenforceable.

In *Associated Homebuilders* v. *City of Livermore*, 56 Cal.2d 847 [17 Cal.Rptr. 5, 366 P.2d 448], the California Supreme Court declared that a connection fee "is in the nature of an excise tax imposed on all persons thereafter applying for building permits for the privilege of connecting to . . . the facilities of defendant's sewer system." (*Supra*, pp. 852-53.) Although the Legislature cannot delegate taxing power to a private body (Cal. Const., art. XI, § 11), it may authorize special districts to levy taxes or assessments. (Cf. *In re Metropolitan Water Dist.*, 215 Cal. 582, 586 [11 P.2d 1095]; 5 Witkin, Summary of Cal. Law (8th ed.) Taxation, § 91.) The authorization in the present case is clearly found in the Act, section 2(j) quoted above. While the Act did not prescribe strict guidelines as to the manner in which the charge is to be established, it is implicit that the charge must be reasonable (cf. *Boynton* v. *City of Lakeport Mun. Sewer Dist.*, 28 Cal.App.3d 91, 94 [104 Cal.Rptr. 409]).

We must approach the question of constitutional validity through the well established principle that the constitutionality of an ordinance is favored and courts are reluctant to declare an ordinance unconstitutional. Ordinances are *presumed* to be constitutional if *any rational consideration* supports their enactment (cf. *Zahn* v. *Board of Public Works*, 195 Cal. 497, 514 [234 P. 388], affd. 274 U.S. 325 [71 L.Ed. 1074, 47 S.Ct. 594]; *Melton* v. *City of San Pablo*, 252 Cal.App.2d 794, 798 [61 Cal.Rptr. 29]). "When the legislature has committed to a municipal body the power to legislate on given subjects or has committed to it judgment or discretion as to matters upon which it is authorized to act, courts . . . have no power to interfere with such a body in the exercise of its legislative or discretionary functions" (*Nickerson* v. *San Bernardino*, 179 Cal. 518, 522 [177 P. 465]; cf. *Associated Homebuilders, supra*, at p. 854).

While no court *in this state* has passed directly on the constitutionality of an ordinance charging sewer connection fees *pursuant to a special enabling act*, we find assistance in similar cases, such as *Associated Homebuilders, supra*, and *Boynton, supra*, and find persuasive *Washington Holding Corp.* v. *County Utilities Corp.* (1967) 207 Va. 729 [152 S.E.2d 50]. *Associated Homebuilders, supra*, examined the constitutionality of a connection fee ordinance passed by a city under authority of section 5471.

The California Supreme Court noted that ". . . the charge prescribed by the subject ordinances is measured by the use to which the property (and consequentially the city's sewer system) will be put, including the number and type of plumbing fixtures to be installed" (*supra*, at p. 852). Furthermore, "[t]he particular sequence or manner in which such charges were to be fixed . . . was a matter wholly within the legislative discretion of the Livermore City Council and hence beyond the scope of judicial inquiry. [Citations omitted.] [The ordinance] was therefore valid on its face, and plaintiff had the burden of evincing facts to show that it was unconstitutional as applied" (*supra*, at p. 854).

*Boynton* v. *City of Lakeport Mun. Sewer Dist.*, *supra*, examined the constitutionality of a particular sewer rate schedule, as opposed to a connection fee schedule. The principle that the fee must be related to the burden which is placed on the system also applies in a rate case. This court (Division Three) noted that "[t]he burden placed on a sewer system by users is not susceptible of mathematical calculation" (*supra*, at p. 96). The court further pointed out that factors which may be considered include the type and number of fixtures, the amount of water consumed, and the amount or strength of sewage in the discharge water.

In *Washington Holding Corp.* v. *County Utilities Corp.*, *supra*, the rate-fixing body equated a 99-bed nursing home to a 99-unit apartment house for the purpose of charging a sewer connection fee. Washington Holding Corp's challenge that the resulting $175 per bed charge was arbitrary, unreasonable and without justification was held to be without merit by the Supreme Court of Virginia. While we recognize the slight differences between a convalescent hospital and a nursing home in terms of functions, these institutions are substantially identical with respect to the burden on the sewer system. The $175 per bed connection fee in *Washington Holding Corp.* is remarkably similar to the fee charged in the present case, and as the Virginia court could not find that fee unreasonable, we cannot here find the District's fee unreasonable.

English Manor contends that a charge per bed space bears no reasonable relationship with the burden on the system. In support of this argument, it focuses on the "number and type of plumbing fixtures" statement in *Associated Homebuilders*, and proceeds to develop an argument based on the average number of fixtures in the residential category versus the average number of fixtures in the commercial category. It is inappropriate for English Manor to focus on any one factor, whether it be the number of

fixtures or the number of beds. *Associated Homebuilders* merely indicates that the number of plumbing fixtures may be one of many factors to be considered by the fee-fixing body. Other general factors, such as sewage content, may be weighed, and additionally many specific factors may have been evaluated with respect to convalescent hospitals. Examples include the utilization rate of centralized kitchen and laundry facilities and the extra burdens placed on sewage facilities by hospital 24-hour care.

Indeed, given the presumption in favor of constitutionality, we must presume that the District considered all of these factors. In view of the scope of the total hospital burden, we do not find it unreasonable that the allocation is based on the number of beds. Certainly, the composite burden is proportional to the number of patients, and we note that the common method of referring to hospital size (which relates to burden) is the number of beds. The fact that the final charge is based upon the number of beds in no way demands the conclusion that the fee was arbitrarily set, or that it bears no reasonable relation to the burden upon the system.

For similar reasons, we find no merit in English Manor's contention that the fee, as it relates to convalescent hospitals, is discriminatory. The judgment of dismissal is affirmed.

Kane, J., and Rouse, J., concurred.