TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1104 |
| of | : | |
| | : | March 5, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MIKE THOMPSON, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

1.     Does the method by which the Vallejo Sanitation and Flood Control District calculates the monthly user fees charged for the operation and maintenance of its storm drainage system meet constitutional requirements?

2.     Is the Vallejo Sanitation and Flood Control District required to obtain prior voter approval when revising the methodology by which it calculates its storm drainage system monthly user fees, resulting in an increased amount being charged certain persons?

CONCLUSIONS

1.     The method by which the Vallejo Sanitation and Flood Control District calculates the monthly user fees charged for the operation and maintenance of its storm drainage system does not meet constitutional requirements.

2.     The Vallejo Sanitation and Flood Control District is required to obtain prior voter approval when revising the methodology by which it calculates its storm drainage system monthly user fees, resulting in an increased amount being charged certain persons.

ANALYSIS

The Vallejo Sanitation and Flood Control District ("District") operates a sanitation sewer system and a storm drainage system for its customers. (See *English Manor Corp.* v. *Vallejo*

*Sanitation & Flood Control Dist.* (1974) 42 Cal.App.3d 996, 1000.) The two systems are operated separately, with the sewer system connecting to a water treatment plant and the storm drainage system transporting water directly into San Francisco Bay. **Footnote No. 1**

The customers of the District are charged separately for maintaining the two systems. Currently only those persons who are connected to the sewer system are charged monthly fees to maintain the storm drainage system. If a parcel is vacant or otherwise not connected to the sewer system, no storm drainage system user fees are imposed. Hence, owners of parcels used for storage facilities, parking lots, or other uses that do not require a sewer connection escape the fees.

1.       Validity of the Fees

The first question presented for resolution is whether the District's method of imposing its storm drainage system monthly user fees meets constitutional requirements. We conclude that it does not.

At the November 5, 1996, general election, state voters approved Proposition 218, adding articles XIII C and XIII D to the Constitution. The two constitutional amendments generally require prior voter approval for new or increased general taxes (Cal. Const., art. XIII C, § 2, subd. (b)), special taxes (Cal. Const., art. XIII C, § 2, subd. (d)), assessments (Cal. Const., art. XIII D, § 4, subds. (d), (e)), and fees and charges (Cal. Const. art. XIII D, § 6, subd. (c)). Among the specific constitutional requirements is that fees and charges "imposed upon any parcel . . . shall not exceed the proportional cost of the service attributable to the parcel." (Cal. Const., art. XIII D, § 6, subd. (b) (3).) The first question focuses on this latter constitutional provision.

It is evident that a storm drainage system is designed to benefit individual parcels of property. It transports runoff water from rainstorms and other sources into channels and waterways, rather than allowing the water to flood areas where it might damage property. These purposes are confirmed by statutes enacted by the Legislature to implement article XIII D of the Constitution. Government Code section 53750 provides in part:

"For purposes of Article XIII C and Article XIII D of the California Constitution and this article:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) 'Drainage System' means any system of public improvements that is intended to provide for erosion control, landslide abatement, or for other types of water drainage.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) 'Flood control' means any system of public improvements that is intended to protect property from overflow by water.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The owners of land used for such purposes as storage buildings and parking lots are benefitted by the District's storm drainage system services. Yet they are not charged any fees if they are not connected to the District's sewer system. It necessarily follows that the District's costs associated with operating and maintaining the system are borne totally by those connected to the sewer system. Therefore, those who *are* charged the fees must pay more than the proportional cost of the services attributable to their own parcels. This is not permissible under article XIII D, section 6, subdivision (b)(3) of the Constitution. **Footnote No. 2**

We conclude that the method by which the District charges monthly user fees for its storm drainage system services does not meet constitutional requirements.

2.      Prior Voter Approval

The District intends to establish a new schedule of storm drainage system fees that will be based upon the proportional cost of storm drainage services provided to each parcel, a schedule that will take into account the amount of impervious area of each developed parcel. Accordingly, persons in the District who currently have no sewer connections will be subject to the storm drainage system fees for the first time.

The second question presented for resolution concerns whether the voters of the District must approve the proposed change in calculating the new monthly user fees for operating and maintaining the District's storm drainage system. We conclude that an election must be held and approval given.

At the core of this question is subdivision (c) of section 6 of article XIII D of the Constitution, which provides:

"Except for fees or charges for sewer, water, and refuse collection services, no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area. . . ."

A fee or charge is "property related" if it is for "a public service having a direct relationship to property ownership." (Cal. Const., art. XIII D, § 2, subd. (h).) Subdivision (e) of section 2 of article XIII D states:

"'Fee' or 'charge' means any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service."

In contrast, an "assessment" is defined in subdivision (b) of section 2 of article XIII D as follows:

"'Assessment' means any levy or charge upon real property by an agency for a special benefit conferred upon the real property. 'Assessment' includes, but is not limited to, 'special assessment,' 'benefit assessment,' 'maintenance assessment' and 'special assessment tax.'"

The District plans to impose the new monthly rates as "fees" for providing storm drainage "services" to its customers rather than as "assessments" to cover the cost of providing its storm drainage system as a "benefit" to the parcels within the District. Because of the conclusion we reach, it makes little analytical difference whether the establishment of "fees" or "assessments" is involved here.

Undoubtedly, the new monthly fees will be "property related," since they will be based upon the amount of impervious area of each developed parcel. As observed in answer to the first question, the District's storm drainage system is intended to serve directly the property within the drainage area. (See Gov. Code, § 53750, subds. (d), (f).)

The main issue to be resolved is whether prior voter approval is required for imposition of the proposed fees in light of the exception from voter approval for "fees or charges for sewer, water, and refuse collection services." (Cal. Const., art. XIII D, § 6, subd. (c).) If the fees are for sewer, water, or refuse collection services, no voter approval is necessary.

First, as for sewer services, the term "sewer" is often used differently in different contexts. (See, e.g., Pub. Util. Code, § 230.5.) We note that subdivision (a) of section 5 of article XIII D refers to "[a]ny assessment imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, water, flood control, drainage system, or vector control." Such language in a related constitutional provision supports application of the following rule of statutory construction: "If a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicates an intent the provision is not applicable to the statute from which it was omitted." (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1827.) **Footnote No. 3** Placing "flood control, drainage systems" in section 5 of article XIII D while omitting such terms in section 6's voter approval exemption clause evidences an intent to require prior voter approval of new or additional storm drainage system fees.

The Legislature has similarly distinguished sewer systems from storm drainage systems in various statutory schemes. For example, Government Code section 63010, subdivision (i) describes the two separately as follows:

"... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) 'Drainage and flood control' includes ditches, canals, levees, pumps, dams, conduits, pipes, storm sewers, and dikes necessary to keep or direct water away from people, equipment, buildings, and other protected areas as may be established by lawful authority, as well as the acquisition, improvement, maintenance, and management of floodplain areas and all equipment used in the maintenance and operation of the foregoing.

"... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(10) 'Sewage collection and treatment' includes pipes, pumps, and conduits that collect wastewater from residential, manufacturing, and commercial establishments, the equipment, structures, and facilities used in treating wastewater to reduce or eliminate impurities or

contaminants, and the facilities used in disposing of, or transporting, remaining sludge, as well as all equipment used in the maintenance and operation of the foregoing.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Health and Safety Code section 5471 likewise differentiates between sewer systems and storm drainage systems, as does the organic act under which the District was formed and continues to operate (see Stats. First Ex. Sess. 1952, ch. 17, p. 351; Deering's Wat.--Uncod. Acts, Act 8934; West's Water Code--App., ch. 67). **Footnote No. 4**

Any remaining doubt is removed by applying the following principle of statutory construction recently reaffirmed in *City of Lafayette* v. *East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1017:

". . . 'Exceptions to the general rule of a statute are to be strictly construed. In interpreting exceptions to the general statute courts include only those circumstances which are within the words and reason of the exception. . . . One seeking to be excluded from the sweep of the general statute must establish that the exception applies.' [Citations.]"

If storm drainage system fees are not fees for "sewer . . . services," are they fees for "water . . . services" within the meaning of article XIII D, section 6, subdivision (c)? Government Code section 53750, subdivision (m) defines "water" for purposes of article XIII D as "any system of public improvements intended to provide for the production, storage, supply, treatment, or distribution of water."

While there may be some temporary storage of water in connection with a storm drainage system, it is apparent that the District's drainage and flood control system is designed to do the opposite of that which the Legislature's definition of "water . . . services" contemplates. The District's storm drainage system does not produce water or supply it to end users. Rather than distributing water, it collects and removes it. The District does not treat any water flowing into its storm drainage system. Consequently, the exception from voter approval in Article XIII D, section 6, subdivision (c), for "water . . . services" is inapplicable.

Finally, we note that prior voter approval is required only if the fees or charges are "imposed or increased." (Cal. Const., art. XIII D, § 6, subd. (c).) Here, the District proposes to change its method of calculating the fees in question, which revision will impose the fees on some property owners who have not previously been charged. The Legislature has addressed this issue in Government Code section 53750:

"For purposes of Article XIII C and Article XIII D of the California Constitution and this article:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(h)(1) 'Increased,' when applied to a tax, assessment, or property-related fee or charge, means a decision by an agency that does either of the following:

"(A) Increases any applicable rate used to calculate the tax, assessment, fee or charge.

"(B) Revises the methodology by which the tax, assessment, fee or charge is calculated, if that revision results in an increased amount being levied on any person or parcel.

"(2) A tax, fee, or charge is not deemed to be 'increased' by an agency action that does either or both of the following:

"(A) Adjusts the amount of a tax or fee or charge in accordance with a schedule of adjustments, including a clearly defined formula for inflation adjustment that was adopted by the agency prior to November 6, 1996.

"(B) Implements or collects a previously approved tax, or fee or charge, so long as the rate is not increased beyond the level previously approved by the agency, and the methodology previously approved by the agency is not revised so as to result in an increase in the amount being levied on any person or parcel.

"(3) A tax, assessment, fee or charge is not deemed to be 'increased' in the case in which the actual payments from a person or property are higher than would have resulted when the agency approved the tax, assessment, or fee or charge, if those higher payments are attributable to events other than an increased rate or revised methodology, such as a change in the density, intensity, or nature of the use of land.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The District will be revising the methodology by which the storm drainage system monthly user fees are calculated, resulting in an increased amount being charged certain persons. The formula is newly developed to reflect the proportional cost of the services attributable to each landowner served. (See Cal. Const., art. XIII D, § 6, subd. (b)(3).) Hence, the proposed adjusted fees will be "imposed or increased" for purposes of article XIII D.

No other constitutional or statutory provision appears to affect our determination. We conclude that the District is required to obtain prior voter approval when revising the methodology by which it calculates its storm drainage system monthly user fees, resulting in an increased amount being charged certain persons.

* * * * *

---

**Footnote No. 1**
We are informed that in a few localities, the sewer system and storm drainage system are combined, with both connecting to a water treatment plant. The operation of such combined systems is beyond the scope of this opinion.

**Footnote No. 2**
The *storm drainage* fees charged by the District are based upon the amount of *sewer system* usage attributable to a parcel. We have not been informed of any relationship between sewer usage and the District's proportional cost of providing storm drainage services to a particular parcel. (See fn. 1.)

**Footnote No. 3**
Rules of statutory interpretation "apply as well to the interpretation of constitutional provisions." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735.)

**Footnote No. 4**

As previously noted, in a few localities the sewer system and storm drainage system are combined and connect to a water treatment plant. (See fn. 1.)

---