[Civ. No. 23957. Second Dist., Div. Three. Apr. 22, 1960.]

RABON W. TARRANT et al., Appellants, v. JOHN E. BUTLER et al., Respondents.

William T. Brandlin and John Joseph Hall for Appellants.

Armond M. Jewell and Ralph I. Callen for Respondents.

SHINN, P. J.—This is an action by plaintiffs against John E. Butler, Mutual Mortgage Company, a corporation, Ted C. Christenson, Columbia Escrow, a corporation, Wiley C. Nelson, Edward F. Lyon and Florence P. Lyon, for rescission of a purchase of real property by plaintiffs from defendant Butler, or in the alternative for damages against all defendants. The complaint purports to allege fraud on the part of all defendants and mutual mistake of fact. The demurrer of defendants to plaintiffs' second amended complaint was sustained without leave to amend and judgment was entered in their favor. Plaintiffs appeal.

The complaint alleges that on or about April 21, 1953, plaintiffs purchased a parcel of real property in Los Angeles from defendant Butler. Defendants represented that the property had three rentable units built and available for family living and cooking and that one of the units could be rented for not less than $50 per month; in fact this particular unit could not be rented at all because it had been constructed and was maintained in violation of certain provisions of the Municipal Code of Los Angeles which governed the construction and use of structures intended for human occupancy. The complaint specified the particulars of the violations.

It was alleged that the representations were false in that defendants "did not have information to warrant the positive assertion of said representations." The unit in question was destroyed by fire in September, 1957; October 21, 1957, plaintiff discovered that the restoration of the unit to its original form would be in violation of the municipal code. Plaintiffs gave notice of rescission between the date of discovery and January 15, 1958, and soon thereafter brought this action.

It appears from an exhibit attached to the complaint that the property was subject to a first trust deed of $14,390.57, payable at the rate of $150 a month including interest; plain-

tiff paid $700 in cash and executed a note and trust deed in favor of World Escrow Corporation for $7,334.33, payable $100 a month and a note and trust deed for $575 in favor of W. A. Ayres, payable at $50 a month. It was alleged that plaintiffs had expended approximately $20,000 on the property in repairs and improvements and had collected rentals in the approximate sum of $10,000 and that they had paid certain unspecified sums pursuant to the agreement of purchase.

A separate cause of action, stating essentially the same facts, sought damages of $20,000.

A third cause of action was based upon mutual mistake of fact with respect to the violations of the code. The prayer of the complaint was for rescission or in the alternative damages in the sum of $20,000.

The question is whether the facts alleged stated a cause of action for rescission or for damages. If either count was good it was error to sustain the demurrer without leave to amend. (39 Cal.Jur.2d 230.)

 The complaint stated facts constituting a cause of action for fraud. The positive assertion that the units were rentable and that the one in question could be rented for $50 per month was a representation of fact; it was allegedly made in a manner not warranted by the information possessed by the defendants; it was believed and relied on by plaintiffs. And even if defendants believed the statement to be true, and were merely mistaken, it was nevertheless a fraudulent statement. If the facts alleged in the complaint should be substantiated by proof plaintiffs would be entitled to redress. (Civ. Code, § 1572, subd. 2; *Evans* v. *Spatt*, 131 Cal.App.2d 47 [279 P.2d 1026].)

We shall consider first plaintiffs' cause of action for damages. It was alleged that by reason of defendants' representations plaintiffs have suffered damage in the sum of $20,000. Defendants did not by demurrer, and do not now question the sufficiency of the allegation of damage.

 Defendants demurred upon the ground, among others, that it affirmatively appeared from the complaint that the action was barred by the statute of limitations, relying upon applicable sections of the Code of Civil Procedure. That asserted defense is urged in support of the judgment.

The argument proceeds as follows: The transaction was had in April, 1953; the action was filed more than four years

thereafter; an action for fraud or mistake must be brought within three years, but the period does not commence to run until the discovery of the facts constituting the fraud or mistake (Code Civ. Proc., § 338, subd. 4) ; plaintiffs in the exercise of reasonable diligence would have discovered the alleged fraud within three years after they purchased the property, and they alleged no facts to excuse their failure to make an earlier discovery. We cannot agree with these contentions.

■ It is fundamental that a complaint based upon fraud or mistake filed after the statutory period has run is vulnerable to demurrer based upon the statutory limitation if it fails to allege the circumstances of the discovery and additional facts justifying the delay. (*Grace* v. *Grace*, 89 Cal.App.2d 395 [200 P.2d 864].)

■ The complaint sufficiently alleged the circumstances of the discovery following the fire. It did not allege any facts to excuse the failure to make an earlier discovery, other than the implied fact that plaintiffs believed, because of defendants' representation, that the unit in question had been constructed and used in accordance with legal requirements for buildings intended for human occupancy.

The crucial question is the following: Does it appear from the complaint as a matter of law, that in the exercise of reasonable diligence plaintiffs would have discovered the particulars in which the unit had been constructed and maintained in violation of applicable provisions of the municipal code? Stated otherwise: Were the purchasers of the improved real property, from and after the time of their purchase under an affirmative duty to make an examination of the zoning ordinances, the local building codes and the state laws respecting housing in order to ascertain whether a particular use of the building would be lawful? There is a dearth of direct authority upon this point.

■ It is, of course, not questioned by the parties that a purchaser of property need not commence an investigation as to the truth of representations which induced his purchase until he becomes aware of facts which reasonably suggest that further inquiry should be made in order to discover the truth with respect to the representations. ■ If facts become known which would reasonably bring in doubt whether there had been misrepresentation knowledge will be imputed of all facts which further reasonable inquiry would have disclosed. (Civ. Code, § 19; *Hobart* v. *Hobart Estate Co.*, 26

Cal.2d 412, 442 [159 P.2d 958]; *Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 88-89 [172 P.2d 725].)

 The question in every case is whether there was a duty to make an investigation. This is ordinarily a question of fact.

 In the present case the particulars in which there was nonconformity with the code were specified in the complaint. The unit had been constructed without a building permit; no certificate of occupancy had been issued; the areas of the side yard and the rear yard were inadequate; a water heater was inadequately vented; the water closet did not have a required bolt or lock and was not separated from the kitchen by two full doors. These are the only conditions which defendants can rely upon as facts which would have given notice to plaintiffs that the unit had been unlawfully constructed, maintained and used. The significance of the conditions which were obvious to plaintiffs was to be considered in connection with the representations which defendants had made.

 It is clear that the proper rule of law is that in cases of noncompliance with building regulations and zoning requirements the character of the conditions constituting noncompliance that have become known to the purchaser will determine whether there was a duty to pursue an investigation. It cannot be the law that the existence of every trivial defect of construction charges the owner with a duty to make an investigation. He cannot be expected to know that where the builder used a 2″ x 4″ he should have used a 2″ x 6″. He does not have to employ an architect or a builder to examine the structure. It is true that knowledge of the building and zoning laws will be imputed to a property owner and that ignorance of their requirements would not excuse their violation, but this is a matter between him and the authorities. It has nothing to do with transactions between individuals. As between them the rules of negligence apply. As a basis for a charge of negligence the circumstances must be such as to place the owner under a duty to use reasonable diligence to discover whether his building conforms to legal requirements.

 The final question here is whether the defects of construction described in the complaint established as a matter of law that plaintiffs had a duty to make or cause to be made a study of the municipal code and a critical examination of their building in order to ascertain whether it was

in a lawful condition for human occupancy. Our answer must be that the question was one of fact. The facts alleged fall far short of making it a question of law.

We have heretofore held that in some circumstances the long continued failure of a purchaser to make inquiry respecting the requirements of building laws which might affect his building may bar his action for fraud committed by the seller. The following excerpt from our opinion in *Beresford* v. *Horn,* 127 Cal.App.2d 89 [273 P.2d 302] is sufficient to state both the facts and our conclusions in that case (p. 91): "Plaintiffs recognize the familiar rule that actual notice of circumstances sufficient to put a prudent person upon inquiry is deemed to be notice of facts discoverable in the exercise of reasonable diligence in making an investigation. Civil Code, section 19, states the rule. Therefore they argue that the conditions described in their complaint were not such as to reasonably suggest the necessity for an investigation. This may be true with respect to some of the conditions but is clearly in error as to others. We therefore have the simple question whether, as a matter of law, prudent persons, under the circumstances pleaded would have made an investigation. It is trite to remark that wherever that question arises each case is governed by its own facts, and that no two are alike. We think that any adult person of common intelligence who entered a dwelling having ceilings with a height of only 5 feet, 10 inches, or even 6 feet, 6 inches would immediately realize that it was an extraordinary condition. In a community where such construction was forbidden by law, and the like of which was not to be found, it would occur to anyone with a reasonably alert and functioning mind that the construction was substandard. The ceilings not only lacked the required height but they gave evidence of striking defects in workmanship. Half the ceiling in the kitchen had a fall of 6 inches; the other half a fall of 2 feet, 2 inches; the bedroom ceiling had a fall of 6 inches; half the ceiling of the service porch had a fall of 2 feet, 2 inches. These were not minor deviations from universal standards; they were conspicuous oddities. They not only presented a unique appearance but they detracted from the usefulness of the rooms."

Factually and legally the present case is quite different. The defects and oddities in the Beresford building could not have been overlooked. They were irreconcilable with common standards of construction and clearly placed the owner upon

notice that the building must have been constructed without regard to legal requirements. No other conclusion was tenable. Although the complaint here alleges, generally, the particulars in which the code was violated it does not purport to describe the particular manner or extent of the violations. For example, the side and rear yards were insufficient in area but it cannot be learned from the complaint whether the insufficiency was negligible or so gross as to constitute notice to an observer of possible violations of the code. Some of the alleged violations were certainly not conspicuous and some were not observable at all. It is clearly a case in which evidence should be taken.

There is no reason to doubt that upon a trial of the action the proof may show that the nonconformity with the building code, as described in the complaint, was not such as to cause persons of ordinary intelligence to suspect that the structure in question has not been lawfully constructed and used. That is a factual question upon which we express no opinion. If the court should find that the existence of obvious conditions when plaintiffs entered into possession constituted notice which placed them under a duty to make an investigation it would follow from that finding that the causes of action were barred. If a contrary finding should be made it would follow that the action is not barred, since it does not appear from the complaint that plaintiffs became aware of any other facts that would have suggested the necessity for an investigation. We conclude that the complaint stated a cause of action for damages and was not subject to demurrer upon the ground that the action was not brought in time.

We are impressed with the fact that the complaint is no model pleading.

In the cause of action for damages there is no allegation as to the value of the property and no definite allegation as to the purchase price or the amounts paid on account.

In the cause of action for rescission there is no allegation as to the amounts that have been paid to defendants or the amounts that have been expended for repairs or for improvements. If it is claimed by plaintiffs that upon rescission they should be compensated for improvements they had made, defendants would have a right to be informed as to the nature of the improvements. They should have an opportunity to again demur to the complaint upon the ground of uncertainty. In order to prepare their defense they are entitled to know what sums plaintiffs claim to have expended for repairs and

what sums for improvements. As stated in *Campbell* v. *Northrop*, 212 Cal. 45 [297 P. 541] : ''Moreover, had the court been required to decree any relief of this nature [rescission] it would only have been the amount representing the enhanced value of the land due to such improvements, and the cost thereof was not a proper criterion. (*Conlan* v. *Sullivan*, 110 Cal. 624 [42 P. 1081] ; *Petit* v. *Flint etc. Co.*, 119 Mich. 492 [75 Am.St.Rep. 417, 78 N.W. 554] ; *Fountain* v. *Semi-Tropic Co.*, 99 Cal. 677 [34 P. 497].) ''

If plaintiffs should establish a right to rescission relief would be granted upon equitable terms and conditions. An action seeking rescission is essentially one for relief upon conditions that are just and fair. But if a complaint states facts justifying a rescission it is not impaired by a prayer for relief that would unduly favor the plaintiff.

However, our only holding as to the cause of action for rescission is that it is not barred by the statute of limitations.

The judgment is reversed; defendants should be permitted to again demur to the complaint if they so desire, and plaintiffs should be permitted to again amend the complaint.

Vallée, J., and Ford, J., concurred.