[Civ. No. 30060. First Dist., Div. Three. Oct. 13, 1972.]

DAVE BOYNTON et al., Plaintiffs and Appellants, v.
CITY OF LAKEPORT MUNICIPAL SEWER DISTRICT NO. 1 et al.,
Defendants and Respondents.

COUNSEL

Crump, Bruchler & Crump and Bruce B. Bruchler for Plaintiffs and Appellants.

W. J. Harpham for Defendants and Respondents.

## Opinion

**BROWN (H. C.), J.**—Plaintiff property owners appeal from a decision upholding the constitutionality of the method by which the City of Lakeport fixes sewer rates and water rates.

The trial court found that the classification of the sewer rates was "uniform and reasonable and is not arbitrary, discriminatory or capricious," and that only an additional water charge of $.25 per dwelling unit over two in number was invalid.

We have concluded for the reasons and facts hereinafter set forth that (1) the sewer rate plan is not discriminatory and is a valid rate plan, and (2) the ordinance fixing water rates is invalid to the extent it charges larger minimum rates to commercial users with the same number of meters as others charged a lower rate.

### Sewer Rates

On April 24, 1967, the City Council of the City of Lakeport, sitting as the governing body of the City of Lakeport Municipal Sewer District No. 1, adopted ordinance No. 427 pertaining to sewer rates which, among other things, provided that: "SECTION V. MAINTENANCE FEES: The City Council shall prescribe by Resolution the charges, time and manner of collection of all sewer maintenance fees.

"The City Council may by Resolution, classify or define various kinds of domestic sewage in accordance with their relative effects upon the operation of the sewerage system, and may provide for varying maintenance charges in accordance with the relative difficulty or cost to the District of acceptance and treatment thereof.

"SECTION VI. UNIFORMITY OF RULES: All rules, fees, charges or regulations provided for by this ordinance shall be uniform throughout the District."

Pursuant to resolution No. 427, the city council on June 26, 1967, passed resolution No. 628 providing, among other things, for regular monthly sewer fees. Fees for domestic users were set at $2.15 per month. Fees for commercial users were set at 60 percent of the monthly water bill for users taking water from the City of Lakeport.

On November 19, 1968, the city passed resolution No. 690, the resolution under attack in this action and No. 628 was repealed. Resolution No. 690 established a monthly service charge minimum of $3. It

then set forth a schedule of units upon which additional sewer charges would be calculated in accordance with the category in which the particular commercial enterprise was placed. Commercial establishments are classified in accordance with the use of the property, e.g., trailer courts, hotels and motels, restaurants, service stations, barber shops. Each category is assigned a number of units, generally using the number of available restrooms, kitchens, or people served. For example, trailer courts are assigned three units for a manager's or owner's quarters, plus three units for each trailer occupied; restaurants are assigned two units per restroom, plus five units for the first twenty seats or fraction thereof over twenty; drive-in restaurants are assigned ten units; establishments not falling into a category are assigned three units for each restroom plus one unit for each sink. Commercial laundries are charged on the basis of 100 percent of their water bill.

These units are billed on the basis of $1 per unit per month. Thus, appellant Dave Boynton, owner of Will-O-Point, a resort trailer park, pays $248 per month sewer charge. Other appellants are similarly charged since all fall into the same category of trailer parks with the exception of Dale Sauer, owner of Anchorage Inn, motel and apartments.

The parties stipulated that no findings were adopted to support any of the unit charges made in resolution 690 of the municipal sewer district. It was also stipulated that no evidence exists justifying a different rate or charge because of the kind or nature of the sewage. All users of the sewer facilities are also users of the Lakeport Municipal Water Supply on a metered basis as the sole source of water from which sewage might be generated.

Appellants prepared an exhibit comparing water usage and sewer service charges showing that users in the category complaining here are charged more per unit of sewage based upon water use than are users in other categories. For example, Safeway Stores pays .00043 dollars sewage charge per cubic foot of city water used while the Lucky Four Trailer Court pays .00869 or approximately 20 times as much per cubic foot of water.

The City of Lakeport is authorized by Health and Safety Code section 5471 to fix and collect fees for sewer services furnished by it. In so doing it must follow the general principle that "[t]he charges must be reasonable, fair and equitable, must be fixed by ordinances which are not arbitrary, and must be uniform and without discrimination against particular property owners." (64 C.J.S., p. 272; see also *Durant* v. *City*

*of Beverly Hills,* 39 Cal.App.2d 133, 138-139 [102 P.2d 759]; 11 Mc-Quillin, Municipal Corporations, § 31.30a.) The assessment must be proportional and not in excess of the benefits received. (56 Am.Jur.2d 625.)

The city council has provided by its resolution No. 427 for the classification of users in accordance with their effect on the sewer system and has required that the fees be uniform throughout the district. Appellants do not contend that the classification of users in accordance with their effect on the sewer system is an unreasonable classification; nor could they, for such charges do not constitute an assessment on the value of the property but must be reasonably commensurate with the burden placed on the system by the users. (See *Associated Homebuilders* v. *City of Livermore,* 56 Cal.2d 847, 852 [17 Cal.Rptr. 5, 366 P.2d 448].) Appellants' contention is that they have shown that the city's classifications made in resolution No. 690 are not in accordance with their effect upon the system by the evidence which discloses that the sewer charges do not correspond to the amount of water used. It is appellants' argument that the amount of water metered into the premises is proportionate to the amount that flows away through the sewer system and that the lesser amount of water used, the lesser burden on the sewer system.

The city does not dispute the appellants' figures or that the sewer rates do not correspond with the amount of water used. At trial the city did not offer any evidence to justify the selection of the rate plan and thus has relied on the presumption that the rates, having been fixed by the lawful rate-fixing body, are reasonable, fair and lawful. The burden of overcoming this presumption is on the assailant. (*Durant* v. *City of Beverly Hills, supra,* 39 Cal.App.2d at p. 139.) The question narrows to whether this presumption has been overcome by evidence that the rates did not correspond to the amount of water consumed.

No California case has been cited or found which discusses the reasonableness of any method of fixing sewer rates. Other jurisdictions, however, have upheld sewer charges based upon water consumption (see 64 C.J.S. 273-274) although it has been recognized that water consumed is not an exact corollary to the burden upon the sewer system. In holding that rates based upon property valuation were unreasonable, the court in *In re City of Philadelphia,* 343 Pa. 47 [21 A.2d 876], upheld that portion of the plan based upon water rent observing that "the amount of water which flows into a building is apt to be roughly proportional to what flows out as sewage. While there are exceptions without doubt, and while it might be more equitable to consider some further factors having to

do with types of use, yet we cannot say that a measure of sewer use as based upon water use is inequitable." (P. 878.) We note also that rates fixed by the number and type of plumbing fixtures was unquestioned in *Town of Port Orchard* v. *Kitsap County,* 19 Wn.2d 59 [141 P.2d 150].

The burden placed on a sewer system by users is not susceptible of mathematical calculation. Consequently, even under the method suggested by appellants, inequities will result. The amount of water consumed would bear a high correlation with the amount of sewage-bearing water discharged. The correlation would not be exact, however, for it does not take into account water which does not exit via the sewer system. Those residences, commercial and industrial establishments which use quantities of water for the upkeep of gardens, lawns, swimming pools, would be subject to this inaccuracy if the amount of water intake is the only measure of burden on the sewer system. Even the amount of sewage-bearing water discharged into the sewer will not correlate exactly with the burden on the sewer system since the amount or strength of the sewage in the water may vary, even if all sewage is domestic sewage. In examining appellants' figures, it is seen that categories consisting of multiple dwelling units generally pay a higher sewer rate per gallon of water consumed than do laundries, stores, offices and public buildings. This disparity is explainable by a difference in strength of sewage as reflected by the different types of fixtures.

In fixing rates according to number and type of fixtures and number of people using the fixture, resolution No. 690 apparently has also taken into consideration the fact that the entire sewer system must be maintained in size and strength to accommodate the potential maximum use of all facilities permitted. This also is relevant to the burden on the system.

We have concluded that the classifications of resolution No. 690 upon which sewer rates are made are reasonably related to the burden imposed upon the sewer system. While other methods, including the use of water metered rates, could be used in fixing sewer rates, the method here used was not unreasonable or discriminatory.

### Water Rates

■ Appellants next contend that the ordinance fixing water rates arbitrarily fixed higher minimum rates for commercial users than it charges to others with the same number of meters.

In October 1964, the City of Lakeport enacted resolution No. 666(68) fixing rates for use of water from city facilities. The section of the resolu-

tion under attack reads as follows: "c. COMMERCIAL RATES—INSIDE CITY LIMITS:

"c.1. The rate per month for each commercial user within the boundaries of the City of Lakeport, consisting of duplexes, multiple dwelling units and office or business occupancy, EXCEPT for apartment houses and dwelling groups, shall be a minimum of $3.50 for each dwelling unit, office or business occupancy, for the first 1,000 cubic feet or fraction thereof of water used, $.15 per 100 cubic feet for the next 5,000 cubic feet of water used, and $.12 per 100 cubic feet for all water used in excess of 6,000 cubic feet.

"c.2. The rate per month for each commercial user within the City of Lakeport consisting of apartment houses, dwelling groups, rest homes, hospitals, convalescent homes, motels, motor hotels, inns and trailer parks shall be a minimum of $3.50 each for the first two dwelling units, rooms, or suite of rooms, and trailer spaces, and $.25 for each dwelling unit, room, or suite of rooms, and trailer space or unit over two in number, for the first 1,000 cubic feet or fraction thereof of water used, $.15 per 100 cubic feet for the next 5,000 cubic feet of water used, and $.12 per 100 cubic feet for all water used in excess of 6,000 cubic feet.

"c.2(a). Where washing or sanitation facilities are provided separate from or independent of the said dwelling unit, room or suite of rooms, or trailer space, then each such separate unit for which a minimum of $.25 shall be charged in addition to the minimum hereinabove immediately provided in Section X, subsection c.2, unless a separate meter is used, in which event, a separate minimum of $3.50 will be charged and collected."

The court held that resolution No. 666(68) is void to the extent that it charges $.25 for each additional unit over two in number. Appellants argue on appeal that the extra $3.50 per month charged for the second unit is discriminatory on the same basis as is the extra $.25.

According to the ordinance above, commercial users are charged a minimum of $3.50 per month for the first 1,000 cubic feet of water except for certain users who are charged a higher minimum because of additional dwelling units, office or business occupancy or separate washing or sanitation units. Differences in minimum rates are not limited to appellants who complain of an additional $3.50 minimum for the second dwelling unit and $.25 for each dwelling unit over two. Users who come under the multiple occupancy exception in paragraph c.1 seem to be charged an additional $3.50 minimum for *each* additional unit.

"If the difference in rates is based upon a reasonable and fair differ-

ence in conditions which equitably and logically justify a different rate, it is not an unjust discrimination." (12 McQuillin, Municipal Corporations, § 34.101, p. 231.) Thus, the additional $3.50 provided in paragraph c.2(a) for additional meters is justified because the water district is performing an additional service by providing and reading the meter and billing separately. Except for this additional rate for separate meters, no difference in service provided can be discerned merely because there are multiple units which use the 1,000 cubic feet of water. As McQuillin points out in his discussion of classifications made by public utilities, it has been held that "[a] public service company cannot charge different prices according to the use of the supply made by the customer, nor is a discrimination proper which is based on the value of the service to the customer." (*Id.* at p. 232.)

 Respondents do not discuss the water rates in their brief nor did they appeal from the court's decision that the additional $.25 per dwelling unit was an unreasonable discrimination. In none of the materials on file in this case is there any explanation for the difference in minimum rates per 1,000 cubic feet of water. There being no rational basis for the classifications discernible on the face of the resolution, it is concluded that the ordinance is void to the extent that it charges larger minimum rates to commercial users with the same number of meters as other users.

The judgment so far as it approves the extra $3.50 charge as set forth in resolution No. 666(68), paragraphs c.1 and c.2, is reversed and the matter is remanded to the trial court to amend its finding and judgment in accordance with this opinion.

The judgment is otherwise affirmed.

Draper, P. J., and Caldecott, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 7, 1972.