[No. B033898. Second Dist., Div. Six. Feb. 3, 1989.]

FRANK L. WINNAMAN, Plaintiff and Appellant, v.
CAMBRIA COMMUNITY SERVICES DISTRICT, Defendant and
Respondent;
BOARD OF DIRECTORS OF CAMBRIA COMMUNITY
SERVICES DISTRICT, Real Party in Interest.

## COUNSEL

David L. Medvedoff for Plaintiff and Appellant.

Roger C. Lion, Jr., for Defendant and Respondent and for Real Party in Interest.

## OPINION

**ABBE, J.**—Appellant Frank L. Winnaman appeals from a judgment denying his petition for a writ of mandate to compel respondent Cambria Community Services District (CCSD) to provide water and sewage service to Winnaman's development project for a connection charge of $3,840.08 rather than the $24,544.78 demanded by CCSD. We affirm.

### FACTS

The matter was tried upon facts stipulated by the parties. Winnaman planned to construct a "commercial service center" with buildings to be used for warehouse and storage, wholesale sales and services, contractors' offices, auto repair and storage and related uses.

CCSD is authorized to provide water and sewer service to applicants who qualify under state law and CCSD's ordinances and regulations. CCSD is also authorized by law to prescribe, revise, collect and charge reasonable fees for its services and facilities.

On February 8, 1984, Winnaman obtained a "will serve" letter from CCSD. The letter stated in pertinent part: "To Whom it May Concern: [¶] This letter serves as notification that the District will serve water and sewer to [Winnaman's parcel] for COMMERCIAL SERVICES ONLY upon presentation of your Coastal Development Permit and the payment of the fees."

On March 20, 1985, the CCSD board of directors passed ordinance 1-85 by unanimous vote; the ordinance became effective 30 days thereafter.

Ordinance 1-85 provided for water and sewer connection fees based on each 2,000 square feet of building area in a commercial development. The ordinance in existence at the time 1-85 was enacted provided for a single connection fee regardless of the size of the project. As calculated under 1-85, the connection charge for Winnaman's project was $24,544.78, instead of $3,840.08 due under the prior ordinance.

Ordinance 1-85 further provided: "This ordinance shall be applicable to any development which has not received all final development permits, including County Building Permits and Coastal Development Permits, on the effective date of this ordinance."

Winnaman had obtained a coastal development permit in February of 1985, and subsequently submitted it to CCSD. On April 8, 1985, he paid a service connection fee of $3,840.08 to CCSD, and his applications for the service were marked "paid." He had not yet applied to the county for a building permit.

On April 1, 1985, a grading permit was issued by the county, and grading work commenced sometime prior to April 19, 1985.

On April 19, 1985, ordinance 1-85 became effective.

On April 30, 1985, Winnaman applied for building permits for phase one and two of the project, and the permits were issued on May 21, 1985.

On June 24, 1985, an employee of CCSD installed a water meter on Winnaman's property, but the meter was removed by CCSD on June 24 or 25, 1985, apparently because Winnaman refused to pay the higher fees demanded by CCSD.

On July 18, 1985, Winnaman filed a petition for a writ of mandate to require CCSD to provide water service at the fee charged prior to ordinance 1-85. This petition did not attack the ordinance itself, but only raised the question of whether the ordinance applied to Winnaman.

On December 6, 1985, the parties agreed that Winnaman would pay the full amount demanded by CCSD under protest. They further agreed that Winnaman's damages would be limited to recovering the fees paid under protest.

On March 6, 1986, Winnaman filed an amended petition which, among other issues, raised for the first time an attack on the validity of the ordinance itself.

The parties negotiated a stipulated statement of facts upon which the trial was held. The trial court denied Winnaman's petition for a writ of mandate and he appeals.

DISCUSSION

I.

■ Winnaman contends that his challenge to the validity of the ordinance was not barred by the statute of limitations. We disagree.

The trial court determined that Winnaman's attack on the ordinance was barred by the 120-day limitation of Government Code section 54995. That section provides in pertinent part: "Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion levying a new fee or service charge, or modifying or amending an existing fee or service charge, duly enacted by a local agency, as defined in Section 54994, shall be commenced within 120 days of the effective date of the ordinance, resolution or motion . . . ."

Because the ordinance became effective on April 19, 1985, and Winnaman first attacked the validity of the ordinance in an amended petition for writ of mandate on March 6, 1986, there is no question that Winnaman's attack on the ordinance was barred by the statute.

However, for the first time Winnaman argues on appeal that the trial court should have considered the second paragraph of section 54995 which provides: "If an ordinance, resolution, or motion provides for an automatic adjustment in a fee or service charge, and the automatic adjustment results in an increase in the amount of a fee or service charge, any action or

proceeding to attack, review, set aside, void, or annul the increase shall be commenced within 120 days of the effective date of the increase."

We need not decide whether this issue was properly raised for the first time in this court, because the second paragraph concerns an "automatic adjustment" in a fee or service charge, and is not applicable to this case. Here the fee being challenged was increased by a new ordinance and not by a provision in an existing ordinance requiring an automatic adjustment.

## II.

■ Even if Winnaman's attack were not barred by the statute of limitations, it is without merit.

Winnaman argues that the fees charged must be ". . . without discrimination against particular property owners." (Citing *Boynton* v. *City of Lakeport Mun. Sewer Dist.* (1972) 28 Cal.App.3d 91, 94 [104 Cal.Rptr. 409, 61 A.L.R.3d 1228].) He further cites Government Code section 54991, subdivision (a), which provides in pertinent part: "Notwithstanding any other provision of law, when a local agency imposes fees for water connections or sewer connections, or imposes capacity charges, those fees or charges shall not exceed the estimated reasonable cost of providing the service for which the fee or charge is imposed . . . ."

Winnaman's contention is that the ordinance is invalid because it does not show on its face that the connection charges are based upon the nature of the use and the benefit extended. However, Winnaman provides no authority which supports the proposition that such matters must appear on the face of the ordinance.

The long-standing rule is that rates fixed by a lawful rate-fixing body are presumed to be reasonable, fair and lawful, and the burden of overcoming this presumption is on the party challenging the ordinance. (*Durant* v. *City of Beverly Hills* (1940) 39 Cal.App.2d 133, 139 [102 P.2d 759].)

Winnaman cites no evidence to overcome the presumption that the ordinance is lawful. He merely states, "[i]t is inconceivable that a commercial trailer court, motel, hotel or restaurant would not use excessive water reserves in contrast with a commercial warehouse." Such a statement is argument, it is not evidence.[1] Winnaman has failed to rebut the presumption that the ordinance is lawful.

---

[1] Winnaman's project is not limited to a commercial warehouse. It includes, among other uses, auto repair and "related uses." The record discloses no evidence by which the trial

Winnaman's reliance on *Boynton* v. *City of Lakeport Mun. Sewer Dist.,* *supra,* 28 Cal.App.3d 91, is misplaced. In that case Boynton challenged the city's sewer and water user fees on the ground that they discriminated against certain users. The trial court found that the sewer rates were lawful, and also found that the water rates were lawful except for a $0.25 charge on certain dwelling units.

The Court of Appeal upheld the trial court's determination that the sewer rates were lawful based on Boynton's failure to overcome the presumption of lawfulness. (28 Cal.App.3d at pp. 95-96.)

The Court of Appeal also upheld the trial court's determination as to the lawfulness of the water rates except that it struck down a $3.50 fee in addition to the $0.25 fee struck down by the trial court. The court's determination as to the $3.50 fee was based on the trial court's finding that the $0.25 fee was discriminatory, both fees having been challenged on the same basis. (28 Cal.App.3d at pp. 97-98.)

In the instant case Winnaman is not aided by any such finding of the trial court.

Nor is Winnaman aided by *English Manor Corp.* v. *Vallejo Sanitation & Flood Control Dist.* (1974) 42 Cal.App.3d 996 [117 Cal.Rptr. 315]. In that case appellant challenged the validity of an ordinance setting sewer connection fees for convalescent homes and hospitals by charging per bed space. The trial court upheld the ordinance and the Court of Appeal affirmed stating: "English Manor contends that a charge per bed space bears no reasonable relationship with the burden on the system. In support of this argument, it focuses on the 'number and type of plumbing fixtures' statement in *Associated Homebuilders* [v. *City of Livermore* (1961) 56 Cal.2d 847 (17 Cal.Rptr. 5, 366 P.2d 448)], and proceeds to develop an argument based on the average number of fixtures in the residential category versus the average number of fixtures in the commercial category. It is inappropriate for English Manor to focus on any one factor, whether it be the number of fixtures or the number of beds. *Associated Homebuilders* merely indicates that the number of plumbing fixtures may be one of many factors to be considered by the fee-fixing body. . . ." (*Id.,* at pp. 1004-1005.)

Given the presumption of validity, the court in *English Manor Corp.* v. *Vallejo Sanitation & Flood Control Dist., supra,* 42 Cal.App.3d 996, presumed that the district considered the appropriate factors in determining

court could have determined that the number of square feet in a project has no reasonable relationship to the burden of the project on water and sewer services.

the fees to be charged. (*Id.,* at p. 1005.) Here we must also presume that CCSD considered the appropriate factors.

## III.

■ Winnaman contends that he had a vested right to water and sewer service. We disagree.

"It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. [Citations.]" (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546].)

However, in the instant case Winnaman cannot claim "good faith reliance" when at the time he paid the connection fees on April 8, 1985, ordinance 1-85 provided that higher fees would be applicable to all projects which had not obtained building permits by April 19, 1985. Winnaman did not even apply for building permits until April 30, 1985.

For similar reasons Winnaman's estoppel argument must fail. The party claiming estoppel must have relied upon the conduct of the opposing party. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423].) Here the existence of the ordinance requiring parties who had not obtained building permits by April 19, 1985, to pay higher fees, precluded such reliance.

It is no answer to claim, as Winnaman does, that there was no proof he knew of the ordinance at the time he paid the fees. Even if he had no actual knowledge of the ordinance, knowledge would be imputed to him. (See *McCarthy* v. *California Tahoe Regional Planning Agency* (1982) 129 Cal.App.3d 222, 232-233 [180 Cal.Rptr. 866]; *Tarrant* v. *Butler* (1960) 180 Cal.App.2d 235, 240 [4 Cal.Rptr. 230].)

Winnaman cites *Tosh* v. *California Coastal Com.* (1979) 99 Cal.App.3d 388, 393 [160 Cal.Rptr. 170], for the proposition that "'. . . a building permit may no longer be the *sine qua non* of a vested right if preliminary public permits are sufficiently definitive and manifest all final discretionary approvals required for completion of specific buildings.' [Citations.]"

Winnaman's reliance on *Tosh* is misplaced. Even if a building permit is no longer the sine qua non of a vested right, good faith reliance is still an

element of such a claim. In the instant case, as we have said, the wording of the ordinance in question prevented such reliance.

In any event, a connection fee is in the nature of an excise tax (*Associated Homebuilders* v. *City of Livermore, supra,* 56 Cal.2d at pp. 852-853), and the vested rights doctrine does not shield a developer from unforeseen tax increases.

In *Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 486 [141 Cal.Rptr. 36], the city enacted an environmental excise tax ordinance exacting a fee from developers for each new residential unit built. The plaintiff had received a building permit and had already constructed some of the units in his project when the ordinance was enacted. He argued that he had a vested right to complete the project free of the tax.

In rejecting the argument the Court of Appeal stated: "Appellants' attempt to use a vested rights principle to gain immunity from unforeseen taxes is virtually without precedent, and if followed to its logical conclusions, would shield any lawful business from newly enacted municipal taxes if that business had made any sort of irrevocable commitments, either financial or contractual, in commencing operations in that municipality. The imposition of a new tax, or an increase in the rate of an old one, is simply one of the usual hazards of the business enterprise. [Citation.]" (73 Cal.App.3d at p. 494.)

## IV.

■   Finally Winnaman argues that the "will serve" letter constituted a contract offer which he accepted by fulfilling the conditions of the offer; that is, by obtaining a coastal development permit and paying the connection fees.

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." (Rest.2d Contracts, § 24.)

The letter in question is addressed "[t]o whom it may concern," and states "[t]his letter serves as notification . . . ." The letter is not the manifestation of willingness to enter into a bargain. It merely gives notice and

does not constitute an offer to furnish water and sewer services for a certain amount.

The judgment is affirmed. Respondent is awarded costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.