[No. S019591. Dec. 5, 1991.]

CITY OF MOORPARK, Plaintiff and Respondent, v.
MOORPARK UNIFIED SCHOOL DISTRICT et al., Defendants and
Appellants.

922

**COUNSEL**

Bergman & Wedner, Gregory M. Bergman, Richard V. Godino and Robert M. Mason III for Defendants and Appellants.

Bowie, Arneson, Kadi & Dixon, Carol J. Graham, Wendy H. Wiles, Ronald D. Wenkart, Claire Y. Morey, Geraldine Jaffe and Val R. Fadely as Amici Curiae on behalf of Defendants and Appellants.

Cheryl J. Kane, City Attorney, Burke, Williams & Sorenson, Lisa E. Kranitz and Peter D. Tremblay for Plaintiff and Respondent.

Stephanie Scher, City Attorney (La Canada-Flintridge), Brown, Winfield & Canzoneri and Virginia R. Pesola as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

LUCAS, C. J.—In this case we construe for the first time the Naylor Act (Ed. Code, §§ 39390-39404;[1] hereafter the Act), which governs the disposal of certain kinds of surplus school property. The City of Moorpark (hereafter City) petitioned the superior court for a writ of mandate to compel the Moorpark Unified School District (hereafter District) to transfer school property, pursuant to the Act. After the court granted the petition, District appealed. The Court of Appeal, affirming the superior court, concluded that the Act's provisions regarding surplus school property displaced the common law of contracts, that a binding contract for sale had been made under the Act, and that District acted capriciously when it purported to exempt the school site from the Act. We reverse the Court of Appeal's decision.

### I. THE ACT

In the preamble to the Act, the Legislature expressed its concern "that school playgrounds, playing fields and recreational real property will be lost for such uses by the surrounding communities even where those communities in their planning process have assumed that such properties would be permanently available for recreational purposes." (§ 39390.) The Legislature explicitly stated its intention "to allow school districts to recover their investment in such surplus property while making it possible for other agencies of government to acquire the property and keep it available for playground, playing field or other outdoor recreational and open-space purposes." (Ibid.) The net effect of the Act is to make surplus school property available to local communities at less than present market value,

---

[1] All statutory references are to this code unless otherwise noted.

while assuring that participating school districts recover at least the cost of acquiring the property.

The Act applies when a school district determines to sell or lease a school site, if three conditions are met: (1) All or part of the school site consists of land used for school playground, playing field, or other outdoor recreational purposes, and open-space land particularly suited for recreational purposes; (2) the land has been used for at least one of the foregoing purposes for at least eight years immediately preceding the decision to sell or lease the site; and (3) the public entity proposing to purchase or lease the land determines that no other public land in the vicinity of the site is adequate to meet community needs for playground, playing field or other outdoor recreational and open-space purposes. (§ 39391.)

Before a public agency may purchase property pursuant to the Act, it must adopt a plan that designates the areas of the school site the agency does and does not desire. (§ 39397.5.)

Once a school district decides to sell or lease a school site containing land described in section 39391, the sale or lease of such land must be in accordance with the Act. (§ 39393.) A district may retain any part of a school site containing buildings along with adjacent land sufficient to avoid reducing the value of the part of the school site containing the building to less than 50 percent of fair market value. (§ 39395.) Before a district sells or leases a school site containing section 39391 land, the district must first offer to sell or lease the portion of the school site containing section 39391 land, excluding retained land, to a variety of public agencies according to the priority established by the Act. (§ 39394.) The district has "discretion to determine whether the offer shall be an offer to sell or an offer to lease." (*Ibid.*)

The Act provides that the sales price for section 39391 land shall not exceed the district's cost of acquisition with certain adjustments for inflation and improvements. In addition to this maximum price, the Act establishes a price floor of either 25 percent of fair market value or an amount related to bonded indebtedness. (§ 39396, subd. (a).) Likewise, the Act sets a maximum annual lease rate. (§ 39396, subd. (c).) A district that offers a portion of a school site for sale may do so at fair market value, provided the district "offers an equivalent size alternative portion of that school site for school playground, playing field, or other recreational and open-space purposes." (§ 39396, subd. (b).)

Section 39402 provides that a school district may, as an alternative to a sale or a lease pursuant to other provisions of the Act, enter into other

agreements to dispose of the land, such as a lease purchase. If the lessee or grantee has zoning powers, the alternative agreement may require the entity to rezone any portion of the school site retained by the district. (§ 39402.)

Land purchased or leased under the Act must be maintained for playground, playing field, or other outdoor recreational and open-space uses. (§ 39398.) A district that has transferred land may reacquire it at any time at a price set by the same mechanism used to establish the original sales price. (*Ibid.*)

Notwithstanding other provisions of the Act, a school district may exempt not more than two surplus sites from the Act if the district has an immediate need for an additional school site and is actively seeking to acquire such a site and may exempt not more than one surplus site if the district is seeking immediate expansion of the classroom capacity of an existing school by at least 50 percent. (§ 39401.)

## II. FACTS

District owns a school site on Casey Road in Moorpark (hereafter the site). Part of the site is improved with a variety of school buildings. In November 1987, District adopted a resolution finding disposition of the site was in the best interests of District and its students and noting that the site was not a surplus school site. In February 1988, City adopted a resolution stating that public lands in the vicinity of the site were inadequate to meet community needs for playgrounds, playing fields, or other open-space purposes. Three months later, District adopted a resolution, which resolved that sale, lease, or exchange of all or a portion of the site was in the best interest of the students. Unlike District's previous resolution, this resolution failed to state the site was not a surplus school site.[2]

Later in May, District sent to 13 public agencies, including City, a notice of its second resolution. The notice stated that District "proposes to offer for sale, lease, or exchange all or a portion of the [site] at fair market value . . . ." In July, City notified District of its intent to purchase a portion of the site pursuant to the Act and generally described the location of the property City desired, which was referred to as the lower field area. District responded by informing City that District would not consider disposing of the lower field area unless City held hearings to allow for development of an area referred to as the upper parcel, and by asking for City's input on a total development package for the site.

---

[2]Application of the Act does not hinge on a school district's determination that a site is or is not surplus property. If the criteria of section 39391 are met, the Act applies.

After a period of negotiations, District sent a proposal to City offering either a lease-purchase or an outright purchase of the lower field area for a price based in part on fair market value and in part as set by the Act. City rejected the proposal. Thereafter, District twice asked City whether it was still interested in the lower field area and suggested meeting to develop an agreeable proposal.

A City appraisal set the fair market value of the lower field area at $1,279,000. City then advised District, in early May 1989, that it was prepared to take title to the lower field area for $319,750, which was 25 percent of the property's alleged fair market value, as provided by the Act. City and District met on May 30, at which time District made a counterproposal.

City apparently did not respond but instead filed a petition for a writ of mandate and a complaint for declaratory relief, seeking a ruling that District was obligated under the Act to sell the lower field area for $319,750. Thereafter, District passed a resolution to exempt the entire Casey Road site from the provisions of the Act.

The trial court issued the requested writ and ordered District to set aside its resolution exempting the site from the Act. It also ordered District to sell the lower field area at the price established by the Act, 25 percent of fair market value.

The Court of Appeal affirmed. It concluded that sales of surplus school property are governed by the Act and that District's notice of its intent to sell, lease, or exchange some or all of the site constituted an offer rather than a mere invitation to deal. The court rejected District's argument that its notice could not be an offer because of its lack of specificity of material terms, such as price. Instead, the court determined that, unless a school district properly exempts a site from the Act or retains a portion of the site pursuant to the Act, the district cannot sell surplus property for more than the price established by the Act. The court reasoned that the notice was not deficient for lack of specificity; rather, the notice substantially complied with the Act, creating an offer that City accepted by written notice in July 1988.

The Court of Appeal concluded District acted capriciously because it thereafter purported to exempt the site from the Act "solely as an effort to halt . . . City's lawsuit and to thwart . . . City's acceptance of its offer to sell the property at a surplus price." It held that District could not exempt the site from the act "as a means to extricate itself from a binding contract to sell

a surplus site at less than fair market value" and that District had a ministerial duty to sell the site to City.

### III. DISCUSSION

#### A. *Applicability of Common Law*

In its analysis, the Court of Appeal concluded that sales of surplus property are governed by the Act and not by the law of contracts. The court considered the notice sent out by District to be an offer, stating, "The use of the word 'proposes' in the notice does not mean that it is a mere invitation to treat, as it might under common law. The notice substantially complies with section 39394." According to the court, City accepted this offer by its written notice in July of 1988. We disagree.

Statutes generally do not supplant the common law unless it appears the Legislature intended to occupy the field. (*I. E. Associates* v. *Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) The Act does not reveal such an intent.

The Court of Appeal focused on the statement of legislative intent in section 39390 and the Act's price-setting mechanism in section 39396 to conclude that the Act permits District to recover only its investment in the surplus property the District determines to sell, thus making negotiations over price unnecessary. Likewise, the court focused on section 39394[3] to conclude that the common law does not apply and that District's notice substantially complied with the Act's requirements for an offer. We note that this last conclusion seems facially incorrect. District notified City that it proposed to "offer for sale, lease, or exchange all or a portion of the [site] at fair market value." Section 39394 provides that District "shall have discretion to determine whether the offer shall be an offer to sell or an offer to lease." The section thus contemplates that District's offer will either be an

---

[3]Section 39394 provides: "Notwithstanding Section 54222 of the Government Code, the governing board, prior to selling or leasing any school site containing land described in Section 39391, excluding that portion of a school site retained by the governing board pursuant to Section 39395, shall first offer to sell or lease that portion of the school site consisting of land described in Section 39391, excluding that portion retained by the governing board pursuant to Section 39395, to the following public agencies in accordance with the following priorities:

"(a) First, to any city within which the land may be situated.

". . . . . . . . . . . . . . . . . . . . .

"The governing board shall have discretion to determine whether the offer shall be an offer to sell or an offer to lease.

"An entity which proposes to purchase or lease a school site offered by a school district shall notify the district of its intention, in writing, within 60 days after receiving written notification from the district of its offer to sell or lease."

offer to sell or an offer to lease. District's notice spoke of an offer to sell, lease or exchange. Such an offer is not an offer to sell, nor is it an offer to lease.

The Court of Appeal improperly focused on the foregoing statutes rather than construing those statutes with reference to the Act as a whole so that all sections of the Act may be harmonized and given effect. (See, e.g., *Moore* v. *Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32].) The Act contemplates that school districts, after deciding to sell or lease all or part of a site containing section 39391 land, will make an offer to public agencies to sell or lease some of the property at the price established by the Act. (§§ 39390, 39394, 39396.) The Act is not, however, as mechanistic and all encompassing as the Court of Appeal believed. It does not contemplate, as the Court of Appeal seemed to hold, that once a district makes a broad proposal to offer to sell, lease, or exchange all or a portion of a site for fair market value, a responding public agency unilaterally may then decide that there shall be a transaction in the form of a sale of a certain portion of the property for less than fair market value.

Section 39394, relied on by the Court of Appeal, addresses leases and sales. It is clear, however, that school districts may attempt to tailor transfers to fit their needs by engaging in other types of transactions. Section 39402 authorizes districts to "enter into other forms of agreement concerning the disposition of [section 39391] property with any entity enumerated in Section 39394, in accordance with the priorities therein specified . . . ." The variety and the nature of the options available to school districts implicitly require that districts have the ability, recognized under the common law of contracts, to make initial, nonbinding overtures to various public agencies and to engage in a period of negotiations.

For example, a district may wish to dispose of part of a site and to have another part rezoned. Section 39402 expressly contemplates an exchange that requires rezoning. It is therefore reasonable for a district to notify public agencies of its desire to "sell, lease, or exchange all or part of the site" while entertaining the hope that an entity with zoning power, such as a city, will respond. If such an entity does respond, a period of negotiation will likely be necessary to determine what form of exchange will be employed and to what extent the property will be rezoned. Indeed, this apparently is such a case. District informed City that it could not consider disposing of the lower field area unless City held hearings to allow for development of the entire upper parcel; District asked for City's input on a total development package for the site.

The Court of Appeal's conclusion, however, ignores the need to solicit agencies and to engage in negotiations as a prelude to making an offer

pursuant to the Act and hampers the discretion of school districts attempting to shape transactions to fit their individual needs. Properly construed, the Act does not mandate a particular type of transaction and therefore does not by itself render District's statement that it "proposes to sell, lease or exchange all or a portion" of the site sufficiently definite to constitute an offer. Indeed, because the Act does not supply the material term of the form of the transaction, if City had indicated that it wished to lease the site, the trial court would have been faced with the impossible task of divining the length of the lease.

The Court of Appeal, to support its determination that the Act supplants common law and that District made an effective legal offer, implicitly relied on its conclusion that school districts are entitled to recover only the acquisition costs of the surplus property that they sell and that District's statement in its notice that the site was to be offered at fair market value was not authorized by the Act. The court's conclusion, however, is based on an unreasonably narrow reading of the Act.

In its analysis, the court relied on section 39390, which sets forth the statement of legislative intent, and on section 39396, subdivision (a), which provides the mechanism for establishing the maximum sales price based primarily on the cost of acquisition and sets a floor of 25 percent of fair market value. To be sure, these provisions reveal an intent to allow public agencies to obtain playgrounds and similar property at advantageous prices while ensuring that school districts recover their acquisition costs. To that extent, the Act in some instances does supply the parameters for the price term of a contract.

Pursuant to subdivision (b) of section 39396, however, a district may offer a portion of a site at fair market value as long as the district offers an alternative portion for playground-type use. The Act therefore does not eliminate the possibility of recovering fair market value for part of the surplus property. The Court of Appeal failed to consider the possibility that District was attempting to determine whether any public agency was interested in the property at fair market value as a prelude to making an offer that would conform to this subdivision.

The Court of Appeal also relied on section 39399, which subjects transactions under the Act to the requirements of other articles in the code that do not conflict with the requirements of the Act. The Legislature may require school districts to perform certain acts as part of the process of making a contract. Doing so, however, does not remove the contract-making process from the purview of the common law unless the Legislature intends to occupy the field. In this case, the nature of the statutory regulation of the

contract-making process is such that legislative intent appears not to be to supplant the common law but to supplement it by adding requirements not found in the common law. For example, the common law does not list entities to which offers must be made nor does it provide price parameters; the Act does so. But in doing so, it does not purport to remove the entire contract process from application of common law principles consistent with the specific requirements of the Act.

The question of what constitutes an offer is beyond the scope of the Act. The Act does not explicitly define an offer nor does it implicitly, by the breadth of its regulation, support the conclusion that the common law of contracts has been supplanted for purposes of determining whether an offer has been made. Indeed, the flexibility accorded to school districts in the Act, as described in the foregoing discussion, is incompatible with a mechanistic approach to determining whether an offer is present and is best served by, and most reasonably requires the application of, common law principles. We therefore conclude that the Act was not intended to supplant the common law of contracts as it pertains to offers.

## B. *Existence of an Offer Under Common Law*

Our conclusion, that the Court of Appeal erroneously held that courts need not apply common law contract principles to determine whether school districts have made legal offers when selling surplus property, does not end our inquiry. We must decide whether District made an effective legal offer under the common law.

■ " 'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' " (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 128, pp. 153-154 [hereafter Witkin], quoting Rest.2d Contracts, § 24; accord *Winnaman* v. *Cambria Community Services Dist.* (1989) 208 Cal.App.3d 49, 57 [256 Cal.Rptr. 40].) ■ District's notice informing other public agencies that it "proposes to offer for sale, lease or exchange all or a portion of the [site] at fair market value" manifests a willingness to enter into a bargain, but it does not do so in a way that would justify an understanding that assent by the recipient of the notice is invited and will conclude the bargain.

Rather, the notice "suggests the terms of a possible contract"—(1) sale, lease, or exchange of (2) all or a part of a particular school site—"without making a definite proposal. The result is a mere invitation to others to make offers." (Witkin, *supra*, § 133, at p. 157.) District's notice thus was a mere invitation, sent to 13 public agencies with the hope that one or more of them

would express interest in the property. Because it was not an offer, it could not be accepted by City's notice in July 1988, contrary to the conclusion of the Court of Appeal. Moreover, the history of negotiations set out above indicates that although proposals that would qualify as offers were made, none was ever accepted.

## IV. Conclusion

We conclude that the common law of contracts applies to transactions pursuant to the Act and that under common law principles, City and District did not enter into a contract for sale. Accordingly, the judgment of the Court of Appeal affirming the judgment in favor of respondents is reversed.

Mosk, J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.