TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| OPINION | : | |
| | : | No. 97-1102 |
| of | : | |
| | : | January 16, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

        RIVERBANK UNIFIED SCHOOL DISTRICT and SAMUEL BATES have requested this office to grant leave to sue in quo warranto upon the following question:

        When a school district is reorganized and a trustee of the reorganized district is elected to the board of trustees of the newly formed district, does the common law doctrine of incompatible public offices prohibit the trustee from continuing to serve on the board of the reorganized district until it is dissolved, even though a statutory prohibition against such dual office holding has been waived by the State Board of Education?

CONCLUSION

        Granting leave to sue in quo warranto in the present circumstances would not serve the public interest in determining whether a trustee of a newly formed school district may continue to serve as a trustee of a reorganized district until it is dissolved where a statutory prohibition against such dual office holding has been waived by the State Board of Education and only a matter of months remain before the reorganized district is dissolved.

PARTIES

        Riverbank Unified School District ("RUSD") seeks leave to sue in quo warranto to determine whether Samuel Bates ("Bates") is unlawfully serving as a trustee of the Oakdale Joint Union High School District ("OJUHSD") as a result of his election to the board of trustees of RUSD. Bates seeks leave to sue in quo warranto to determine whether Michael Larson ("Larson"), Patricia Blount ("Blount"), and John Mitchell ("Mitchell") are unlawfully serving as

trustees of the Riverbank Elementary School District ("RESD") as a result of their elections to the board of trustees of RUSD.

## MATERIAL FACTS

On June 3, 1997, following approval by the boards of trustees of the affected school districts, by the county committee on school district organization, and by the State Board of Education ("Board"), the electorate approved the reorganization of the Oakdale Elementary School District, Waterford Elementary School District, RESD, and OJUHSD. The reorganization called for the dissolution of the four districts and the creation of several unified school districts, one of which is RUSD. Although approved in 1997, the dissolution of the old districts and their complete replacement by the new unified districts will not occur until July 1, 1998. During the transition period, both the old and new districts will exist, with the new districts performing planning functions and the old districts operating the schools.

When the Board approved the reorganization, it permitted the trustees of each reorganized district to serve simultaneously on the board of trustees of a newly created district. At the election approving the reorganization, the voters elected governing boards for the new districts. Bates, Larson, Blount, and Mitchell were elected to the RUSD Board of Trustees and each assumed office on June 20, 1997. Prior to the June election, Bates was, and continues to serve as, a trustee of OJUHSD, and Larson, Blount, and Mitchell were, and continue to serve as, trustees of RESD.

## ANALYSIS

We have on numerous occasions considered the application of the doctrine of incompatible public offices in various situations. The doctrine prohibits two public offices from being simultaneously held by the same person if a clash of duties between the two would result. A school board trustee holds a public office for purposes of the doctrine, and we have determined that the doctrine precludes a person from simultaneously serving as a trustee of a high school district and of an elementary school district that is within the boundaries of the high school district. (79 Ops.Cal.Atty.Gen. 284 (1996); 68 Ops.Cal.Atty.Gen. 171 (1985).) We have pointed out that only one potential and significant clash of duties need be found to render two offices incompatible. (79 Ops.Cal.Atty.Gen., *supra*, 285; 75 Ops.Cal.Atty.Gen. 10, 12 (1992); 73 Ops.Cal.Atty.Gen. 268, 270 (1990).)

Here, the assets and liabilities of RESD will be assumed by RUSD. (See Ed. Code, §§ 35560-35566.) **Footnote No. 1** Since RESD will continue to operate schools until July 1, 1998, its actions prior to that time may affect the amount and value of the assets and liabilities of the schools. (See § 35533.) Voting on issues affecting those assets and liabilities as a trustee of RESD may create a clash of duties for someone who is also serving as a trustee of RUSD.

Similarly, the ongoing operations of OJUHSD require its trustees to make decisions regarding expenditures for capital improvements. Those decisions will affect RUSD and provide the potential for a clash of duties on the part of a trustee serving on both boards. The two districts, which overlap but are not geographically identical, each have a financial interest in

placing the financial responsibility on the other for undertaking major repairs to the school facilities in question.

These potential and actual clashes of responsibilities would normally be sufficient to invoke the incompatible public offices doctrine. However, that doctrine, being of common law origin, is subject to abrogation or modification by the Legislature. (*American Canyon Fire Protection Dist.* v. *County of Napa* (1983) 141 Cal.App.3d 100; *McLain* v. *County of Alameda* (1962) 209 Cal.App.2d 73; 63 Ops.Cal.Atty.Gen. 748, 750 (1980).) Does the Education Code allow application of the incompatible offices doctrine in the present circumstances?

Section 35106 provides:

"When a member of the governing board of a school district which is being reorganized and which will cease to exist takes office as a member of the initial or interim governing board of a newly formed school district, he shall cease to be a member of the governing board of the district being reorganized.

"The county board of education shall then appoint another person who is eligible to serve on the governing board of the district being reorganized to the vacant position for the duration of the existence of the district being reorganized, but in no case for longer than 12 months."

Section 35106 appears to codify the incompatible public offices doctrine. However, section 33050, with certain exceptions not applicable here, allows the Board to waive "all or any part of any section of this code." Here, as previously mentioned, the Board approved requests by each reorganized school district to waive, as authorized by section 33050, the prohibition of section 35106.

In examining the relationship between common law rules and statutory enactments, we find that a common law provision is not repealed by implication if there is no repugnancy between it and the statute and it does not appear that the Legislature intended to cover the entire subject matter. (*Gray* v. *Sutherland* (1954) 124 Cal.App.2d 280, 290; 73 Ops.Cal.Atty.Gen. 357, 361 (1990).) This general principal has been applied to provisions of the Education Code. In holding that sections 39390-39404 did not supersede application of a common law rule, the Supreme Court stated: "Statutes generally do not supplant the common law unless it appears the Legislature intended to occupy the field. [Citation.]" (*City of Moorpark* v. *Moorpark Unified School District* (1991) 54 Cal.3d 921, 928; see also *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 815.) On the other hand, even if the Legislature has not explicitly abrogated a common law provision, it may be implicitly evident from the statutory scheme that the Legislature intended to do so. (*American Canyon Fire Protection Dist.* v. *County of Napa, supra,* 141 Cal.App.3d at 104.)

Normally, a statute is not to be read in isolation. "`A statute must be construed "in the context of the entire statutory scheme of which it is a part, in order to achieve harmony among the parts."'" *(People* v. *Hull* (1991) 1 Cal.4th 266, 272.) "[E]ach sentence must be read not in isolation but in light of the statutory scheme [citation]." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735.) Statutes are to be blended into each other, even when they are in different

codes. (*Meninga* v. *Raley's, Inc.* (1989) 216 Cal.App.3d 79, 90; *Austin* v. *Board of Retirement* (1989) 209 Cal.App.3d 1528, 1532.)

Section 33050 generally allows the Board to waive "any section" of the Education Code. While there are many sections of the Education Code that are excepted from this legislative grant of power, section 35106 is not among them. The Board, as the administrative agency charged with the responsibility of approving school district reorganizations (§§ 35750-35755), has construed section 33050 as authorizing it to waive the dual office prohibition of section 35106. Sections 35106 and 33050, read together, indicate that the Legislature codified the common law rule of incompatible public offices with respect to reorganized and newly created school districts, but gave the Board the power to waive the prohibition. The Legislature could have concluded that the Board is in the best position to determine on a case by case basis the appropriateness of having members of a reorganized school district's board also serve on the board of a new district. (See § 33051.)

We are to apply the terms of sections 35106 and 33050 as they are written to effectuate the Legislature's apparent intent. (See *Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 ["the words the Legislature chose are the best indicators of its intent"]; *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) This construction is consistent with the Board's administrative interpretation. (See *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460 ["unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference"].)

Finally, we note that we have generally viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue. (80 Ops.Cal.Atty.Gen. 242, 247 (1997).) Although the precise legal question involved here has not been judicially considered, the principle that the Legislature may alter the common law prohibition against holding incompatible public offices is well settled. (*American Canyon Fire Protection Dist.* v. *County of Napa, supra,* 141 Cal.App.3d 100; *McLain* v. *County of Alameda, supra,* 209 Cal.App.2d 73*;* 63 Ops.Cal.Atty.Gen., *supra*, 750.) Most importantly, even if we were to conclude that a waiver under section 33050 could not allow the dual office holding in question, by the time a court were to resolve this particular issue, the reorganized districts may already be dissolved. (See 75 Ops.Cal.Atty.Gen. 287, 289-290 (1992); 75 Ops.Cal.Atty.Gen., *supra*, 14.) Additionally, the trustees in question relied in good faith upon the action of the Board. Under these specific circumstances, we do not believe that the public interest would be served by a lawsuit questioning the right of these trustees to serve in their former elective capacities by virtue of their election to the new unified school district board. Accordingly, both applications for leave to sue in quo warranto are denied.

\* \* \* \* \*

---

**Footnote No. 1**
All references hereafter to the Education Code are by section number only.

---